**Anthony PERRI (also known as Anthony Marino), Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 03–5012.**

United States Court of Appeals, Federal Circuit.

Aug. 18, 2003.

Irwin Popkin, of Shirley, New York, argued for plaintiff-appellant.

Ada E. Bosque, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were David M. Cohen, Director; and Deborah A. Bynum, Assistant Director. Of counsel was Virginia G. Farrier, Attorney.

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The appellant seeks to recover twenty-five percent of the amount the government received upon the forfeiture of property owned by a defendant in a criminal case, based upon the information and assistance he provided to the government in developing the case. He contends that 28 U.S.C. § 524(c)(1)(B), which created the Department of Justice Assets Forfeiture Fund and authorized the Attorney General to make specified payments from the Fund, entitled him to the amount he seeks, and that in any event he was entitled to recover that amount on the basis of quantum meruit. The Court of Federal Claims rejected both theories and granted the government summary judgment dismissing the appellant's complaint. We affirm.

I

A. The facts alleged in the appellant Anthony Perri's second amended complaint may be summarized as follows:

In 1989, Perri agreed to assist two FBI special agents of the Organized Crime Strike Force in Las Vegas, Nevada in conducting a "sting" operation that would involve members of the New York Columbo organized crime family in money laundering. With Perri's assistance, the "sting" was successful. It resulted in the indictment of Columbo family members on drug and money laundering charges. As part of a plea agreement, one of the defendants agreed to the forfeiture of a horse farm he owned on Long Island, New York. The government received $5,600,000 upon the sale of the farm. Perri alleged that the special agents promised him that, in return for his assistance, the government would pay him twenty-five percent of whatever it realized from the forfeiture of the horse farm, but the government refused to pay him the $1,400,000 to which he is entitled.

The complaint invoked the jurisdiction of the Court of Federal Claims under "28 U.S.C. § 1491." This citation was a clerical error; the correct citation to the Tucker Act, which is the basic jurisdictional statute of the Court of Federal Claims, is 28 U.S.C. § 1491.

Paragraph 1 of the complaint stated: "This action arises under 28 USC § 524(c)(1)(B) as a result of the failure of the defendant to honor an obligation to plaintiff, imposed upon it by an Act of Congress as a result of the matters hereinafter set forth and to recover compensation pursuant to a contract made between plaintiff and defendant, acting through the Federal Bureau of Investigation."

Additional undisputed material in the record shows that once Perri began assisting the government, it paid him monthly $2,000 plus $375 for automobile expenses, and that it paid him slightly more than $80,000 total during the "sting" operation.

B. In dismissing the complaint, the Court of Federal Claims rendered two opinions. In the first, which Judge Andewelt authored, the court rejected Perri's claim under 28 U.S.C. § 524(c)(1)(B). *Perri v. United States,* No. 95–359 C (Fed.Cl. May 24, 1996). As explained in part II A, below, a valid statutory claim under the Tucker Act must be based upon a "money-mandating" statute. The court held that § 524(c)(1)(B) was not such a statute. It stated:

> Read in its entirety, Section 524(c) simply does not contain a sufficiently clear expression that Congress intended to waive sovereign immunity so as to create a substantive right to compensation whenever an individual provides assistance under Section 524(c)(1)(B). Section 524(c) does not make clear that Congress intended to treat awards for assistance under Section 524(c)(1)(B) as mandatory.... Section 524(c)(1)(B) cannot fairly be interpreted as containing the requisite unequivocal expression of intent to waive sovereign immunity and thereby create a substantive new right to compensation.

*Id.* at 4, 8.

Following extensive discovery and Judge Andewelt's death, the case was transferred to Senior Judge Lydon. In its second opinion, the court granted the government's motion for summary judgment and dismissed the complaint. *Perri v. United States,* No. 95–359 C (Fed.Cl. Aug. 27, 2002).

The court first held that Judge Andewelt's prior decision relating to § 524(c)(1)(B) was the law of the case. *Id.* at 14. The court then rejected Perri's breach of contract claim, because Perri had not shown (1) that there was either an expressed or implied-in-fact contract to be paid twenty-five percent of the amount the government realized on forfeiture, (2) that the FBI officials with whom he dealt had authority to enter into such a contract or (3) that any higher FBI official who had such authority had authorized or ratified the alleged contract. *Id.* at 15–28. Finally, the court rejected Perri's quantum meruit claim. *Id.* at 34.

In this appeal, Perri does not challenge the rejection of his contract claim. He contends only that he stated a valid claim both under § 524(c)(1)(B) and for quantum meruit.

## II

A. The Court of Federal Claims has jurisdiction over claims against the United States "founded" upon "any Act of Congress ... or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). "The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Where, as here, the jurisdiction of the Court of Federal Claims is invoked to recover damages based upon a statutory claim, the question is whether "the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967), *quoted with approval in Testan,* 424 U.S. at 400, 96 S.Ct. 948. Unless the statute requires the payment of money damages, there has been no waiver of the

government's sovereign immunity from liability for such damages, and the Court of Federal Claims would not have jurisdiction to entertain the claim. *Testan,* 424 U.S. at 399, 96 S.Ct. 948; *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Sherwood,* 312 U.S. 584, 586–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

The question on this aspect of the case, therefore, is whether § 524(c)(1)(B) requires the payment of money for the damage Perri allegedly has sustained. We agree with the Court of Federal Claims that the statute is not a money-mandating provision, and that that court therefore had no jurisdiction to entertain Perri's statutory claim.

■ B. Section 524 of Title 28, as it stood at the time of this case, provided in pertinent part:

(c)(1) There is established in the United States Treasury a special fund to be known as the Department of Justice Assets Forfeiture Fund (hereafter in this subsection referred to as the "Fund") which shall be available to the Attorney General without fiscal year limitation for the following law enforcement purposes—

(A) the payment, at the discretion of the Attorney General, of any expenses necessary to seize, detain, inventory, safeguard, maintain, advertise, sell, or dispose of property under seizure, detention, or forfeited pursuant to any law enforced or administered by the Department of Justice, or of any other necessary expense incident to the seizure, detention, forfeiture, or disposal of such property including—

. . . .

(B) the payment of awards for information or assistance directly relating to

violations of the criminal drug laws of the United States or of sections 1956 and 1957 of title 18, section 5313 and 5324 of title 31, and section 6050I of the Internal Revenue Code of 1986;

(C) at the discretion of the Attorney General, the payment of awards for information or assistance leading to a civil or criminal forfeiture involving any Federal agency participating in the Fund;

. . . .

(2) Any award paid from the Fund for information, as provided in paragraph (1)(B) or (C), shall be paid at the discretion of the Attorney General or his delegate, under existing departmental delegation policies for the payment of awards. . . . Any award for information pursuant to paragraph (1)(B) shall not exceed $250,000. Any award for information pursuant to paragraph (1)(C) shall not exceed the lesser of $250,000 or one-fourth of the amount realized by the United States from the property forfeited.

Section 524 thus created the Department of Justice Assets Forfeiture Fund, authorized the Attorney General to make payments from the Fund for specified purposes, and prescribed the terms and conditions for making such payments. It is a money-authorizing statute, not a money-mandating one.

Nor are any of the individual subsections money mandating. Although Perri relies entirely on subsection (B), subsection (C) would be a more appropriate reference. Perri seeks payment of a portion of the amount the government realized on the sale of forfeited property, and subsection (C) covers "awards for information or assistance leading to a civil or criminal forfeiture." Indeed, the statutory scheme

at least suggests that Congress intended all claims for awards relating to forfeitures to be handled under subsection (C).

The reason Perri did not invoke subsection (C) is obvious. Since that subsection explicitly provides that awards relating to forfeiture are to be paid "at the discretion of the Attorney General," it would be difficult, if not impossible, to argue that that subsection is a money-mandating provision. Perri thus rests his statutory claim on subsection (B), which does not contain any explicit reference to the Attorney General's discretion.

There are two defects in Perri's argument. First, sub-paragraph (2) provided that "[a]ny award paid from the Fund for information, as provided in paragraph (1)(B) or (C), shall be paid at the discretion of the Attorney General." To avoid this provision, Perri argues that he is seeking an award not just for "information," but also for "assistance," and that the reference to the Attorney General's discretion in subsection (2) does not cover the latter. The distinction between "information" and "assistance" in aiding in law enforcement is not that sharp or clear. It is far from certain that Congress intended thus to limit the Attorney General's discretion under subsection (2).

In any event, even under Perri's theory, subsection (B) is not a money-mandating statute. It provides no standards for determining "payment of awards for information or assistance directly relating to violations of the criminal drug laws of the United States." 28 U.S.C. § 524(c)(1)(B). Moreover, it does not specify the amount to be paid or the basis for determining such amount. As *Eastport* noted, "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to

be paid a certain sum." 372 F.2d at 1007 (citations omitted).

Perri seeks aid and comfort from our decision in *Doe v. United States*, 100 F.3d 1576 (Fed.Cir.1996). It offers him none.

*Doe* involved a different statute, the so-called "moiety statute," 19 U.S.C. § 1619. Prior to 1986, the statute provided that someone who furnished the Secretary of the Treasury or a "Customs officer original information concerning any fraud upon the customs revenue, or a violation of the customs laws or the navigation laws, perpetrated or contemplated, which detection and seizure or information leads to a recovery of any duties withheld, or of any fine, penalty, or forfeiture incurred, may be awarded and paid by the Secretary of the Treasury a compensation of 25 per centum of the net amount recovered, but not to exceed $50,000." 19 U.S.C. § 1619 (1980), *quoted in Doe*, 100 F.3d at 1579. In a series of cases the Court of Claims held that the statute was money mandating and that it had jurisdiction over such claims. *Doe*, 100 F.3d at 1579–80. That court held that, although the statute provided that the Secretary "may" make and pay such an award, the Secretary was required to do so if the claimant satisfied the statutory criteria. *Id.* at 1583–84.

The question in *Doe* was whether, in light of a 1986 amendment changing the statute to read "the Secretary may award and pay such person an amount that does not exceed 25 percent of the net amount so recovered," *id.* at 1580 (quoting 19 U.S.C. § 1619(a) (1994)), the moiety statute continued to be money mandating. *Id.* at 1578. The court held that it did. It pointed out that "the pre 1986 version of section 1619, which provided that the Government 'may' pay an award to claimants satisfying the statutory conditions, has long been

understood to mandate the payment of an award," and it noted that "Congress provided no indication in either the statutory language or legislative history that it intended to reject or alter this construction and to render awards wholly discretionary. *Cf.* 28 U.S.C. § 524(c)(1)(C) (establishing Justice Department's Assets Forfeiture Fund for, *inter alia, 'at the discretion of the Attorney General,* the payment of awards for information or assistance leading to a civil or criminal forfeiture involving any Federal agency participating in the Fund') (emphasis added.)." *Id.* at 1581.

In terms of its money-mandating character, the moiety statute involved in *Doe* is quite different from § 524(c)(1)(B). The moiety statute provides clear standards for paying an award: the furnishing of information about fraud upon or violation of customs laws that led to recovery of duties withheld or of a fine penalty or forfeiture. 19 U.S.C. § 1619 (1980). It stated the precise amount to be paid: originally 25 percent of the amount recovered, but not more than $50,000. *Id.* As interpreted by the Court of Claims, it required the Secretary to make payment to anyone who met those conditions. *Doe,* 100 F.3d at 1579–80. The only question *Doe* decided was that the subsequent statutory amendment modifying the amount to be paid from a flat 25 percent to "not [to] exceed 25 percent" did not change the money mandating character of the moiety statute.

The detailed standards in the moiety statute are a far cry from the general language in subsection (B). It provides only that the forfeiture fund would be available to the Attorney General for specified "law enforcement purposes," including "the payment of awards for information or assistance directly relating to

violations of the criminal drug laws of the United States." 28 U.S.C. § 524(c)(1)(B). The lack of any standards in subsection (B) governing the payment of such awards necessarily means that, like the other payment provisions of § 524, the determination whether to pay an award and its amount is within the discretion of the Attorney General. As Judge Andewelt concluded, "[s]ection 524(c)(1)(B) cannot fairly be interpreted as containing the requisite unequivocal expression of intent to waive sovereign immunity and thereby create a substantive new right to compensation." *Perri,* No. 95–359 C (May 29, 1996), at 8.

### III

Perri's quantum meruit claim fares no better.

■ The Court of Federal Claims' jurisdiction over claims founded on an express or "implied contract with the United States" "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States,* 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (citations omitted); *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1324 (Fed. Cir.1997). Recovery in quantum meruit, however, is based upon a contract implied in law. *Fincke v. United States,* 230 Ct.Cl. 233, 675 F.2d 289, 296 (1982). The theory is that if one party to a transaction provides goods or services to the other party that the parties intended would be paid for, but the recipient refuses to pay for them, the law will imply a contract for the recipient to pay the fair value of what it has received. *See United States v. Amdahl Corp.,* 786 F.2d 387, 393 (Fed.Cir. 1986).

Perri relies upon cases in which this court, the Court of Claims, and the Court

of Federal Claims recognized quantum meruit recovery. *See, e.g., Gould, Inc. v. United States,* 935 F.2d 1271 (Fed.Cir. 1991); *Prestex, Inc. v. United States,* 162 Ct.Cl. 620, 320 F.2d 367 (1963). Those cases, however, involved situations in which the plaintiff provided goods or services to the government pursuant to an express contract, but the government refused to pay for them because of defects in the contract that rendered it invalid or unenforceable. Since in that circumstance it would be unfair to permit the government to retain the benefits of the bargain it had made with the plaintiff without paying for them, the courts utilized quantum meruit as a basis for awarding the plaintiff the fair value of what it supplied to the government.

We know of no case, however, and Perri has not cited any, in which either we, the Court of Claims, or the Court of Federal Claims has permitted quantum meruit recovery in the absence of some contractual arrangement between the parties. In the present case, the Court of Federal Claims ruled that there was no contract between Perri and the government to pay him twenty-five percent of the amount the government received from the forfeiture that Perri alleged he aided the government in obtaining. The Court of Federal Claims correctly dismissed Perri's quantum meruit claim.

## CONCLUSION

The judgment of the Court of Federal Claims dismissing Perri's complaint is

*AFFIRMED.*