**John DOE,[1] Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 01–576C.**

United States Court of Federal Claims.

July 30, 2004.

Elizabeth Thomas and Sonia Orfield, United States Department of Justice, Civil Division Commercial Litigation Branch, counsel for defendant.

**MEMORANDUM OPINION AND ORDER**

BRADEN, Judge.

1. Plaintiff's name, the identity of his counsel, and certain factual details have been omitted to pro-   tect their identities.

## FACTUAL BACKGROUND [2]

### A. Plaintiff Provided Information Leading To Illegal–Drug Arrests And Seizures By The United States Customs Service.

Plaintiff operated a produce business. *See* Def.App. at 434–35. A customer bought a large quantity of spoiled produce for a price higher than usual. *Id.* at 1–4, 312. Plaintiff promptly contacted the United States Customs Service ("Customs") [3] because he believed that the large cash payment for the spoiled produce, by an unfamiliar company, was unusual and suspect. *Id.* at 312–15; *see also id.* at 436 ("[I]n my experience down here, [drug smugglers] use cabbage, broccoli, onions, different things that can . . . mask an odor when they ship something out of here.").

Two days after Customs agents received information from plaintiff, and after setting up a surveillance operation, they executed a search warrant that resulted in the seizure of more than 7,000 pounds of marijuana. *Id.* at 1–5, 298, 322–23. The record is clear that plaintiff provided information that led to initial arrests and seizures in what later became an expanded drug operation. *Id.* at 1–4, 459–60. After the initial seizure, seizures were made in other states as a result of additional information received from other sources and an expanded investigation. *Id.* at 5–255, 458–59.

Two weeks after plaintiff provided the information, Customs agents visited and informed him that the government compensates for information regarding illegal drug operations and that he was eligible for a reward. *Id.* at 439, 461–62. A reward sum was not discussed. *Id.* at 439–41, 462. After learning of the potential for a reward, plaintiff sought additional information and assurances from Customs agents about payment

for his role as a confidential informant. *Id.* at 447–48, 454, 474–76.

### B. United States Customs Service Agents Accompanied Plaintiff To Meet With A Bank Loan Officer.

In August 1999, the President of a local bank met with plaintiff to discuss his interest in obtaining a loan. *Id.* at 423–27, 463, 474–476. At the plaintiff's request, two Customs agents were present at this meeting and confirmed that a payment request had been submitted for plaintiff, but no amount was mentioned. *Id.* at 425, 428–29, 444–52, 464–66, 474. Thereafter, the bank loaned plaintiff $250,000. *Id.* at 428. Plaintiff's pre-existing debt of $350,000 was secured by accounts receivables. As additional collateral for the new loan, plaintiff assigned the proceeds from the government payment that he expected to receive. *Id.* at 427–28, 449–51.

### C. The United States Custom Service Offered Plaintiff A Purchase Of Information Award.

A March 29, 2000 memorandum from a Customs Special Agent to the Office of Investigations of the Assistant Commissioner of Customs sought approval to make a discretionary Purchase of Information ("POI") [4] payment to plaintiff:

> Had it not been for the original lead provided by [plaintiff], the tremendous results in [the] Operation . . . could not have been achieved. . . . [Plaintiff] was the initial person who made the phone call to [Customs]. [Plaintiff] provided agents with the invoice and told agents that the company on the invoice did not exist. [Plaintiff] provided agents with the phone number that was used on the invoice. [Plaintiff] told agents that this purchase of produce did not seem to be legitimate. Because of the phone call

---

**2.** The facts discussed are derived from Defendant's December 31, 2003 Appendix (Def.App.); Plaintiff's February 20, 2004 Appendix (Pl.App.); and Defendant's March 15, 2004 Supplemental Appendix (Def.Supp.App.).

**3.** At this time, the Customs Service was located within the Department of the Treasury; now the

Bureau of Immigration and Customs Enforcement is located within the Department of Homeland Security. *See* 6 U.S.C. § 252 (Supp.2003).

**4.** A Purchase of Information is a discretionary award from the Custom Service's budget. *See Garza v. United States,* 34 Fed.Cl. 1, 18–20 (1995) (describing Congress' appropriations for such payments).

made by [plaintiff] agents seized approximately 7,300 pounds of marijuana, [vehicles], an Uzi fully automatic machine gun, and a commercial sized heat sealer.

Agents were able to investigate the case which resulted in the indictment of ... individuals involved in the seizure of the 7,300 pounds of marijuana. Agents were also able to indict ... additional ... violators related to the seizure of 13,000 pounds of marijuana by DEA[.] As a result of the ... case twenty two ... individuals have been indicted, approximately 33,000 pounds of marijuana seized or linked to the investigation, and $97,000 in U.S. Currency were seized. Agents were able to totally dismantle [an] international drug smuggling organization because of the information, originally provided by [plaintiff].

*Id.* at 300–01. The "domestic value of the merchandise seized" was estimated at $578,000, consisting of vehicles, a residence, jewelry, and cash seized, not including an Uzi machine gun, a device to check for telephone bugs, and an electronic scale. *Id.* at 295–96; Def. Supp.App. at 77. This amount, however, apparently included items that were not retained by Customs or not forfeited. *See* Def.App. at 295–96; Def. Supp.App. at 77.

A March 29, 2000 application by Customs agents requested POI for plaintiff in the amount of $50,000. *See* Def.App. at 302. On April 10, 2000, the application was approved by another Customs official, but in the amount of $25,000. *Id.* at 302–05, 469. As stated on the application, the payment was "in lieu of moiety, or ... to be deducted from moiety." *Id.* at 302. On June 20, 2000, plaintiff was offered the POI payment of $25,000, however, the offer was rejected. *Id.* at 302–04, 333, 430–31, 444, 477. One of plaintiff's employees received a POI payment of $15,000 and another informant within the

smuggling operation received a payment of $100,000. *Id.* at 480–81.

### D. Plaintiff's Entitlement To A Moiety Payment Claim.

The moiety statute provides that the United States may pay up to 25 percent of a net amount recovered, up to $250,000, to a person who provides "original information" concerning violations of the customs laws, that leads to forfeiture of property.[5] *See* 19 U.S.C. § 1619.

On June 21, 2002, plaintiff filed a moiety claim in which he asserted that he is entitled to compensation for seizures that occurred on two dates immediately following the initial information, as well as other seizures that took place on dates four months later; fourteen months later; and sixteen months later. *Id.* at 336–37. A memorandum attached to plaintiff's claim states that Customs agents accompanied him to a meeting at a bank that resulted in plaintiff receiving a $250,000 loan. *Id.* at 337 ("While no exact amount was ever stated, the claimant and the bank were led to believe that the amount of the seizures was in the millions, and that the claimant would be receiving in excess of $250,000[.]").

On January 17, 2003, however, Customs determined the total net recovery from plaintiff's information was $18,877. *See* Def.App. at 335 (Certificate of District Director), 329–419 (moiety claim forms). Under the moiety statute, twenty-five percent of this sum is $4,719.24. *See* U.S.C. § 1619. On February 20, 2003, plaintiff's moiety claim was submitted to headquarters for approval in the amount of $4,719.25. *Id.* at 329, 335.

A supporting February 20, 2003 memorandum describes the basis for the award. *See* Def.App. at 331–34. Two seizures were referenced. *Id.* at 331. The first was made two

---

**5.** A moiety claim recommendation is made by the agent who receives the original information, and a recommendation is sent to Customs Headquarters for final decision. *See* 19 U.S.C. § 1619 (the "moiety statute"); 19 C.F.R. § 161.12 (eligibility regulation); 19 C.F.R. § 161.16 (claim is filed with Special Agent in Charge, who makes recommendation as to approval and amount; form is forwarded to port director who also makes recommendation; form is then forwarded to Customs Headquarters for

action). The applicable regulations also provide that "[a]ny Customs officer who receives information shall advise the informant that, in the event of a recovery, he may be entitled to compensation. He shall also advise the informant that ... any amount received by the informant in the form of purchase of evidence or purchase of information will be deducted from any compensation which may be awarded." 19 C.F.R. § 161.14.

days following plaintiff's information (Seizure No.1998–2305–0–00777–01), which included weapons forfeited, $1,345; drug-related items destroyed, $5,630; and the net recovery on a vehicle, $1,125. *Id.* at 331–419. The second seizure was made the following day (Seizure No.1998–2305–0–00778–01), which included a second vehicle, $8,925, and a third vehicle, $1,852. *Id.* at 331–419. The total of these two recoveries was $18,887, the basis for the moiety offer in the amount of $4,719.25. *Id.* at 329, 335.

## PROCEDURAL HISTORY

On August 29, 2000, plaintiff filed an action in a United States District Court. On October 5, 2001, that action was transferred to the United States Court of Federal Claims where plaintiff filed an amended complaint on November 8, 2001. On August 15, 2003, the case was reassigned from the Honorable Eric G. Bruggink to the undersigned Judge. On December 31, 2003, the United States ("Government") filed a motion for summary judgment, together with an appendix. On February 20, 2003, plaintiff filed a response with an appendix. On March 15, 2003, the Government filed a reply with a supplemental appendix.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims is authorized, under the Tucker Act, 28 U.S.C. § 1491(a)(1), to render judgment and money damages on any claim against the United States based on the United States Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract with the United States. *See United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The United States Supreme Court has clarified that the Tucker Act does not create any substantive right for monetary damages. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). Instead, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to

money damages for the court to have jurisdiction. *See Khan v. United States,* 201 F.3d 1375, 1377 (Fed.Cir.2000).

In *Doe v. United States,* 100 F.3d 1576, 1581 (Fed.Cir.1996), the United States Court of Appeals for the Federal Circuit held that 19 U.S.C. § 1619, as amended in 1986, is a money-mandating statute conferring jurisdiction on the United States Court of Federal Claims. *Id.* at 1581–82; *see also Perri v. United States,* 340 F.3d 1337, 1342 (Fed.Cir. 2003) (contrasting moiety statute with a discretionary award from the Department of Justice Forfeiture Fund).

### B. Standard of Review.

#### 1. Summary Judgment.

If there is no genuine issue as to any material fact, the moving party is entitled to summary judgment as a matter of law. *See* CFCR 56(c); *see also Winstar Corp. v. United States,* 64 F.3d 1531, 1539 (Fed.Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

A material fact is one that might significantly affect the outcome of the suit under applicable law. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.... That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.").

The party moving for summary judgment has the initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party carries its burden to demonstrate an absence of any genuine issue of material fact, then the burden of proof shifts to the non-moving party to show a genuine factual dispute exists. *See Sweats*

*Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). An issue is genuine only if it might prompt a reasonable fact-finder to resolve a factual matter in favor of the non-moving party. *Id.* at 1562–63. The court is required to resolve any doubts about factual issues in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). All presumptions and inferences must be resolved in favor of the non-moving party. *See Jay v. Secretary of Dept. of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir. 1993).

### 2. Review of United States Customs Service Award Under Moiety Statute.

The United States Court of Appeals for the Federal Circuit has held the standard of review in a moiety case is similar to that under the Administrative Procedure Act. *See Doe,* 100 F.3d at 1583 (citing *Tyson v. United States,* 91 Ct.Cl. 139, 32 F.Supp. 135 (1940)). "The proper standard of review for the trial court is that . . . a decision of the Treasury to deny an award will be upheld unless it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, procedurally defective, or unsupported by evidence in the record." *Doe,* 100 F.3d at 1583. A "reviewing court must afford considerable deference to [moiety] determinations, and disturb them only when they are based on fact findings not supported by the record or an incorrect interpretation of the applicable law, or are 'so ridiculously low as to constitute an affront to congressional intent.'" *Id.* (citation omitted).

### C. Resolution Of Issue In Dispute.

### 1. Moiety Statute Applies To United States Customs Drug Seizures

■ The Government argues that, although 19 U.S.C. § 1619 is money-mandating, it is inapplicable to drug information rewards, because they are governed by reward procedures in separate drug statutes that are entirely discretionary. *See, e.g., Nicolas v. United States,* 35 Fed.Cl. 387 (1996) (dismissing complaint for failure to state a claim because the Customs seizure at issue took place under drug laws, not Customs laws, thus no reward was available under 19 U.S.C. § 1619); *Emmens v. United States,* 44 Fed.Cl. 524 (1999) (following *Nicolas*), *Sarlund v. United States,* 39 Fed.Cl. 803 (1998) (following *Nicolas*).

Plaintiff counters that the moiety statute applies to drug seizures by Customs Service agents, because 19 U.S.C. § 1619 applies to seizures "of *any* property effected by customs officers *under any law enforced or administered by the Customs Service* unless such law specifies different procedures." 19 U.S.C. § 1600 (emphasis added). The court has determined that the relevant drug statutes supplement and complement the moiety statute. *See Doe,* 100 F.3d at 1580–82 (discussing 1986 Amendments to 19 U.S.C. § 1619, part of the Omnibus Anti–Drug Abuse Act, Pub.L. No. 99–570, Title III, § 3125, 100 Stat. 3207, 3207–88 (codified at 19 U.S.C. § 1619(a))); *Doe v. United States,* 47 Fed.Cl. 367, 374 (2000), *remanded by* 100 F.3d 1576 (holding on remand that moiety statute also applies to drug seizures by the Customs Service).

### 2. The Government's Moiety Award Offer

■ More than two years after plaintiff rejected the Government's POI award offer of $25,000, the Government calculated an alternative moiety payment in the amount of $4,719.25, *i.e.,* 25% of $18,887. In calculating this amount, Customs attributed two seizures to plaintiff's information, which occurred two and three days following provision of his information. *See* Def.App. at 329–34. Plaintiff, however, claims that his information led to seven seizures on at least five dates. *Id.* at 336–37.

The March 29, 2000 Customs POI memorandum identified the "domestic value of the merchandise seized" in the total operation as $578,000. *See* Def.App. at 295–301. According to the Government, however, not all of this property was retained by Customs or forfeited and, as a result, the "net recovery from the subsequent seizures . . . totaled $167,722.87." *See* Def. Supp.App. at 58–77. Other Government documents, however, evi-

dence $174,272.38 in seizure proceeds resulting from the operation, including $36,700.25 in U.S. currency and $137,572.13 from the sale of jewelry. *Id.* at 163.

In light of the disparate estimates of recovery, the court has determined that the moiety offer by Customs is "procedurally defective" and "unsupported by evidence in the record." *Doe*, 100 F.3d at 1583. Therefore, the Government's motion for summary judgment is denied. Instead, the Government is hereby ordered to submit to the court an independent certified accounting of the net value of all seven seizures identified by plaintiff's moiety application and any other seizures that were part of the overall operation, but not considered in the calculating of plaintiff's initial moiety offer. *Id.* at 1584 ("[T]he trial court in the exercise of its jurisdiction may order the Government, if needed, to render an accounting of the seizures resulting from Appellant's information." (citations omitted)).

## CONCLUSION

For these reasons, defendant's December 31, 2003 Motion for Summary Judgment is hereby denied. The Government is granted until November 1, 2004, to submit an independent certified accounting, which may be supported by declarations of authorized Government agents or document custodians. The court makes no judgment, at this time, in favor of plaintiff on the merits and reserves judgment as what remedy is appropriate, pending the Government's supplementary submission.

The Clerk will place this case file **UNDER SEAL**. This opinion will be issued with the designation of plaintiff as "John Doe."

**IT IS SO ORDERED.**