# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Honeywell International, Inc. | )   ASBCA No. 57779 |
| | ) |
| Under Contract No. W911S1-08-F-0131 | ) |

APPEARANCES FOR THE APPELLANT:          Terry L. Albertson, Esq.
                                        Robert J. Sneckenberg, Esq.
                                          Crowell & Moring, LLP
                                          Washington, DC

APPEARANCES FOR THE GOVERNMENT:         Lt Col James H. Kennedy III, USAF
                                          Air Force Chief Trial Attorney
                                        Marvin Kent Gibbs, Esq.
                                        Jeffrey P. Hildebrant, Esq.
                                          Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MELNICK ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is a successor to a decision issued on 7 August 2013 granting partial summary judgment for the government. Previously, the Board invalidated provisions of a delivery order (DO) issued to Honeywell, Inc. (Honeywell) under an Energy Savings Performance Contract (ESPC). The invalidated terms had counted the value of Solar Renewable Energy Certificates (SRECs) as government utility cost savings, and calculated the portion of Honeywell's payment schedule for solar arrays based upon those savings. The Board also invalidated a provision of the DO that had authorized Honeywell to sell SRECs for the government. *See Honeywell International Inc.*, ASBCA No. 57779, 13 BCA ¶ 35,380.

After discussing settlement, the parties now return with further cross-motions for summary judgment. Honeywell seeks *quantum valebant* damages for the reasonable value of the goods and services it provided pursuant to the invalidated provisions of the DO. The government seeks summary judgment on the ground that the conditions permitting such an award do not exist here. Honeywell's motion is granted and the government's motion is denied.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The following background and facts are not in dispute:

1. Section 8287 of Title 42 of the United States Code (the ESPC statute) authorizes federal agencies to enter into ESPCs. Under these agreements, contractors incur the cost of providing energy conservation measures (ECMs) to government agencies, providing energy savings in exchange for a share of the value of those savings. An ESPC guarantees savings to an agency and establishes a payment schedule based upon it. 42 U.S.C. § 8287(a)(2)(B).

2. On 25 February 1999, the Department of Energy (DOE) awarded Honeywell Contract No. DE-AM01-99EE73683 (later renumbered DE-AM36-99EE73683), an indefinite-delivery/indefinite-quantity ESPC through which agencies could issue DOs for ECM services in six Mid-Atlantic states (ex. B-1, tabs 10, 11; tr. 1/68-69[1]) (the Super ESPC). 13 BCA ¶ 35,380 at 173,606-07. This appeal arises from DO No. W911S1-08-F-0131, which sought services under the Super ESPC for Fort Dix, New Jersey (compl. ¶ 17, answer ¶ 17a; R4, tab 1). *Id.* at 173,607. Among the items required by the DO were two solar arrays. The first was roof mounted and originally designated by the DO as ECM 11.1. (R4, tab 1 at 21, tab 4 at 34; compl. ¶ 17, answer ¶ 17c; app. mot. at 3; gov't mot. at 1) *Id.* The original DO's requirements are designated Phase I. The other array was added through Modification No. P00004 and was ground mounted. (R4, tab 16 at 3; compl. ¶ 18, answer ¶¶ 18a-18b; app. mot. at 6; gov't mot. at 2) *Id.* It is designated Phase II. The contracting officers who awarded the DO and its modifications possessed unlimited contracting warrants (R4, tab 1 at 1, tab 4 at 1, 3; gov't 1st mot., Edler decl., Edgar decl.[2]; app. mot. at 6-7). *Id.*

3. New Jersey mandates that its utilities produce a percentage of their electricity from renewable sources. It permits them to accomplish that requirement by, among other things, acquiring SRECs. SRECs are certificates issued by the state representing the environmental benefits or attributes of one megawatt-hour of solar energy produced by a facility connected to the State's electrical distribution system. SRECs are transferable and there is a market for them. *See Honeywell,* 13 BCA ¶ 35,380 at 173,607.

4. Honeywell and the government agreed in the DO that the government's annual energy savings resulting from the solar arrays would be the value of the electricity produced by them, plus the value of the SRECs they generated. The DO assumed specific values for the SRECs over time. (R4, tab 4 at 4, 82-83, 109, tab 33; gov't 1st mot. at 1-2;

---

[1] The cited transcript is of the oral argument held 13 February 2013 for the parties' first set of dispositive motions.

[2] "Gov't 1st mot." refers to the government's initial motion to dismiss received 2 August 2012.

app. 1st resp. at 6[3]) 13 BCA ¶ 35,380 at 173,607. Based upon the DO's assumptions, Honeywell guaranteed certain annual savings from the ECMs, and the DO scheduled annual payments to Honeywell based upon those savings (R4, tab 4 at 6, 83, 109). *Id.* The government was to finance part of its payments for the solar arrays from the proceeds of SREC sales. *Id.* at 173,609. The DO also authorized Honeywell to sell the SRECs for the government and retain 10% of their value (R4, tab 4 at 4). *Id.* at 173,607.

5. All Phase I work, including the solar array, was completed by Honeywell and accepted by the government sometime between 8 June and 25 September 2009, and payments have been made toward it (compl. ¶¶ 30-32, answer ¶¶ 30-32; app. mot. at 6; gov't mot. at 2). 13 BCA ¶ 35,380 at 173,608. On 1 October 2009, the Army transferred administrative authority for the DO to the Department of the Air Force after Fort Dix became a joint base with McGuire Air Force Base (R4, tab 18; compl. ¶ 5, answer ¶ 5b; app. mot. at 7; gov't mot. at 2). *Id.* In April 2010, the Phase II solar array was supplied by Honeywell as designed, completed on time, and installed as required. However, the government has not connected it to the base electrical grid, tested it, or accepted it. (compl. ¶¶ 33-36, answer ¶¶ 33-36; app. mot. at 7; gov't mot. at 2). *Id.* The government has not declared the array defective and has not rejected it (compl. ¶ 37, answer ¶ 37).

6. On 22 March 2011, Honeywell submitted a certified claim to the Air Force contracting officer, contending the government breached the DO by refusing to inspect and accept the Phase II work, failing to pay interest owed for late payments, and failing to pay an invoice for $2,741,963.06 (R4, tab 50). The contracting officer's final decision rejected the claim on the ground that the solar array portion of the DO was "voidable" because it violated federal property disposition and miscellaneous receipt statutes (R4, tab 53). 13 BCA ¶ 35,380 at 173,608. Honeywell appealed that decision to this Board. Its complaint sought a ruling that it was entitled to payment for both phases, and that Phase II must be accepted. Alternatively, it sought a declaration that the government had received the benefit of the installation of the arrays and that Honeywell should be compensated for the value of those benefits.

7. On 7 August 2013, the Board granted partial summary judgment to the government, invalidating the DO's inclusion of SREC sales revenues among ECM savings and to finance Honeywell's payments, as well as its grant of authority to Honeywell to sell SRECs. 13 BCA ¶ 35,380 at 173,608-13. The Board found that revenues from SREC sales are not cognizable energy savings under the ESPC statute. *Id.* at 173,609-10. The Board also held that the relevant contracting officers lacked authority to permit Honeywell to sell SRECs under General Services Administration property disposal regulations. *Id.* at

---

[3] "App. 1st resp." refers to Honeywell's memorandum responding to the government's initial motion to dismiss and supporting its first cross-motion for partial summary judgment.

3

173,611-12. The Board therefore invalidated the payment calculations for the solar arrays that had been premised upon those sales. *Id.* at 173,613.

8. Since the Board's prior summary judgment ruling, the government has made some payments toward Phase I, excluding the value of SREC's from its calculation. The parties dispute whether any of the amount paid was for solar arrays. No payments have been made toward Phase II. (App. reply br. at 3; gov't opp'n at 1; Edgar 2d decl. ¶ 11 (attached to gov't opp'n))

DECISION

Summary judgment is appropriate where there is no genuine issue of material fact and a movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Acknowledging that the Board has invalidated the DO's inclusion of SREC sales among the government's energy savings, and therefore the solar array payment schedule, Honeywell claims it is entitled to the reasonable value of the arrays under the doctrine of *quantum valebant. Quantum valebant* or *quantum meruit*[4] are typically remedies arising from an implied-in-law contract, where there is no express agreement between the parties but one is imposed in the interest of justice. Such relief is normally not within the Board's jurisdiction to grant. *RGW Commc'ns, Inc. d/b/a Watson Cable Co.,* ASBCA No. 54495, 05-2 BCA ¶ 32,972 at 163,333; *see also Int'l Data Prods. Corp. v. United States,* 492 F.3d 1317, 1325-26 (Fed. Cir. 2007); *Perri v. United States,* 340 F.3d 1337, 1343-44 (Fed. Cir. 2003). However,

> Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a *quantum valebant* or *quantum meruit* basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated *under* the contract, but rather under an implied-in-fact contract. [Footnote omitted]

*United States v. Amdahl Corp.,* 786 F.2d 387, 393 (Fed. Cir. 1986). The court in *Amdahl* elaborated upon this remedy's application by quoting from *Prestex, Inc. v. United States,* where the United States Court of Claims explained that:

---

[4] *Quantum meruit* refers to services provided while *quantum valebant* refers to goods. There is no significance to the difference. *Barrett Refining Corp. v. United States,* 242 F.3d 1055, 1059 n.1 (Fed. Cir. 2001).

4

Even though a contract be unenforceable against the Government, because not properly advertised, not authorized, or for some other reason, it is only fair and just that the Government pay for goods delivered or services rendered and accepted under it. In certain limited fact situations, therefore, the courts will grant relief of a quasi-contractual nature when the Government elects to rescind an invalid contract. No one would deny that ordinary principles of equity and justice preclude the United States from retaining the services, materials, and benefits and at the same time refusing to pay for them on the ground that the contracting officer's promise was unauthorized, or unenforceable for some other reason. However, the basic fact of legal significance charging the Government with liability in these situations is its retention of benefits in the form of goods or services.

786 F.2d at 393 (quoting *Prestex, Inc. v. United States,* 320 F.2d 367, 373 (Ct. Cl. 1963)).

The court of appeals has clarified that "*Amdahl* speaks to the situation in which the government receives the goods or services for which it contracted, but then seeks to avoid payment by arguing that the underlying contract was unlawful." *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1334 (Fed. Cir. 2006); *see also Perri,* 340 F.3d at 1344 (acknowledging *quantum meruit* has applied in "situations in which the plaintiff provided goods or services to the government pursuant to an express contract, but the government refused to pay for them because of defects in the contract that rendered it invalid or unenforceable"). Accordingly, *quantum valebant* or *quantum meruit* recoveries have been permitted under an implied-in-fact contract theory for the fair market value of goods and services delivered to the government pursuant to an invalid express contract. *Barrett Refining Corp.,* 242 F.3d at 1059-60; *Urban Data Sys., Inc. v. United States,* 699 F.2d 1147, 1154-55 (Fed. Cir. 1983); *Yosemite Park and Curry Co. v. United States,* 582 F.2d 552, 560-61 (Ct. Cl. 1978). Here, Honeywell has delivered two solar arrays to the government pursuant to the DO (SOF ¶¶ 2, 5). Given that the payment terms for those arrays have been invalidated by the Board's SREC ruling, Honeywell seeks reasonable value for them.

The government contests Honeywell's entitlement to *quantum valebant* by claiming the DO was never intended to procure equipment such as the arrays, but was simply to achieve energy cost savings. It says invaliding the DO's solar array payment terms does not result in an implied-in-fact obligation to pay for the arrays because the subject of the DO was not to acquire the arrays. The government also contends that the contracting

5

officers who awarded each phase of the DO lacked authority to form an implied-in-fact contract because the Board has ruled that they could not convey SRECs to Honeywell.

The Super ESPC says it is "to acquire...energy conservation services...to reduce energy, water consumption and associated utility costs." It states "The Contractor shall be responsible for providing all labor, material, and capital to install energy and water conservation projects and provide operations and maintenance as specified in each Delivery Order." It adds that "[t]he cost of an [ECM] project must be covered by the reduced energy and related operation and maintenance cost savings incurred at the Federally-owned facility." (Ex. B-1, tab 12 at 6) It then lists a variety of ECMs that can be acquired, including photovoltaic systems (*id.* at 6-8). Thus, the object of the contract was to acquire ECMs in the form of goods and services that would reduce the government's energy consumption and costs, and which the government would pay for out of those savings. The DO sought to obtain such ECMs for Fort Dix, including the solar arrays.

Although Honeywell guaranteed that the solar arrays would generate annual savings based partially on SREC sales, it did not bear the sole risk that the Board would invalidate the DO's reliance upon those sales to justify the solar array payment schedule. *See Amdahl*, 786 F.2d at 393 (noting that "in many circumstances it would violate good conscience to impose upon the contractor *all* economic loss from having entered an illegal contract"). The government may not keep the arrays for free because their payment terms were stricken. Instead, the contract incorporates into it an implied-in-fact promise by the government to pay at least fair value for what it received. *Barrett Refining Corp. v. United States,* 45 Fed. Cl. 166, 170-71 (1999) (explaining that the invalidation of a price adjustment clause incorporates an implied-in-fact promise to pay fair market value), *aff'd,* 242 F.3d at 1059-60. This is similar to *Urban Data Systems*. There, after the government bargained for and accepted supplies under an otherwise valid contract containing an invalid price term, the government remained obligated under *quantum valebant* to pay reasonable value for the supplies and services already provided. 699 F.2d at 1150-56. *See Yosemite Park and Curry,* 582 F.2d at 560 (though the terms of a contract violated federal procurement regulations, the contractor's performance of the bargained-for services, and the government's receipt of them, obligated the government to pay *quantum meruit*).

Furthermore, contrary to the government's suggestions, each phase of the DO was awarded by a contracting officer possessing an unlimited contracting warrant (SOF ¶ 2). The fact they agreed to invalid payment terms did not bar their authority to bind the government to an implied-in-fact promise to pay at least fair value for what it received. If that was the case, *quantum valebant* and *quantum meruit* awards would not be recognized.

In sum, it is undisputed that authorized government contracting officers bargained for the delivery of two sets of solar arrays, while also expecting the arrays to generate

6

sufficient savings to pay for themselves. With the invalidation of the payment terms relating to the arrays, the government still retained an implied-in-fact contractual obligation to pay Honeywell *quantum valebant* damages for the value of what it received.

The government also denies any obligation to pay for the Phase II array because it never officially accepted it, has not connected it to the power grid, and therefore claims it has gained no benefit from it. The government relies upon language in *Amdahl* stating that "where conforming goods or services have been delivered by a contractor and accepted by the government, the contractor has been held entitled to payment, either on a *quantum valebant* or *quantum meruit* basis." 786 F.2d at 395. The government contends that Honeywell's claim is an "extraordinary assertion that a contractor is entitled to *quantum* [*valebant*] damages notwithstanding that the agency has neither accepted offered goods nor received a benefit from them" (gov't resp. at 6).

It is undisputed that in April 2010, Honeywell supplied the Phase II array to the government as designed, completed it on time, and installed it as required by the DO. The government has not indicated that the array is defective, and has not rejected it. (SOF ¶ 5) The fact that the government has chosen not to connect it to the base electrical grid and use it is irrelevant. Although *Amdahl* does indicate that *quantum valebant* and *quantum meruit* damages are owed when goods or services have been accepted by the government, it does not suggest that the government may avoid liability by simply retaining delivered goods while refusing to officially accept them. Indeed, *Amdahl* emphasizes *Prestex*'s holding that "the basic fact of legal significance charging the Government with liability in these situations is its retention of benefits in the form of goods or services." 786 F.2d 393 (quoting *Prestex*, 320 F.2d at 373). Honeywell provided both the Phase I and II arrays to the government, and is therefore entitled to *quantum valebant or quantum meruit* recovery for all of those goods and services.[5]

---

[5] Honeywell's motion contends that initial capital prices and liability schedules in the DO determine the *quantum valebant* damages that are due to it. However, its opposition to the government's motion for summary judgment, as well as its reply supporting its own motion, stress that all it seeks now is a ruling that it is entitled to damages. In the next phase of the proceedings Honeywell will address the specific quantum it seeks.

## CONCLUSION

Honeywell's motion for summary judgment is granted and the government's motion for summary judgment is denied. The appeal shall proceed in accordance with the scheduling order issued 20 January 2015.

Dated: 24 September 2015

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 57779, Appeal of Honeywell International, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8