Peter C. NWOGU, d/b/a, Environmental Safety Consultants, Inc., Plaintiff,

v.

UNITED STATES, Defendant.

No. 09–268C.

United States Court of Federal Claims.

Aug. 30, 2010.

Joshua A. Moses, Silver Spring, Md., for the plaintiff.

David D'Alessandris, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Byrant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division, Washington, D.C. Of counsel, Ellen M. Evans, Senior Trial Attorney, Naval Facilities Engineering Command, Washington Navy Yard, Washington, D.C.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

Plaintiff, Environmental Safety Consultants, Inc. (ESCI), seeks payment of a $93,989.00 judgment, plus interest, awarded by the Armed Services Board of Contract Appeals (ASBCA) on a contract dispute between plaintiff and the United States Navy. The Navy, however, indicates it has taken setoff action against this amount for monies the government argues it is owed on a second Navy contract, also with the plaintiff. In addition to breach of contract, plaintiff, Peter C. Nwogu and plaintiff's attorney have made allegations of due process and equal protection violations pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, as well as a charge of slavery, pursuant to the Thirteenth Amendment to the Constitution, civil rights violations, including national origin discrimination pursuant to 42 U.S.C. § 1983 (2006), violation of the Takings Clause of the Fifth Amendment to the United States Constitution, and violation of the Prompt Payment Act.[1]

The history of plaintiff's litigation with the Navy involves multiple contracts between the parties, as well as numerous disagreements and multiple trips to the ASBCA and to the United States Court of Appeals for the Federal Circuit. In relevant part, the relationship began on May 23, 1991, when the Navy awarded ESCI Contract No. N62472–90–C–5164 to remove, transport, and dispose of industrial waste sludge from two lagoons at the Naval Air Development Center in Warminster, Pennsylvania (Contract I). *See Envtl. Safety Consultants, Inc.,* ASBCA Case No. 47498, 00–1 BCA ¶ 30,826, at 152,-129 (Feb. 29, 2000). According to the complaint, the contract was awarded with "Mr. Nwogu as the project manager." Mr. Nwogu was the founder, owner, President and only employee of ESCI at the time the contract was awarded. The contract was awarded as a small business set-aside. According to the decision of the ASBCA on Contract I, the contractor and subcontractors encountered conditions that were more difficult to deal with than anticipated, progress on the contract was delayed, and a serious deterioration of the relationship between the parties occurred. A cure notice was issued to the plaintiff and, ultimately, the Navy and ESCI entered into a bilateral agreement to terminate Contract I in March 1992. Subsequently, in June 1992, ESCI filed a claim with the contracting officer asserting, as also stated in ESCI's complaint in this court, that ESCI incurred increased costs in performing Contract I because the "waste sludge [was] materially different from the information specified in the contract." As a result, ESCI requested an equitable adjustment of $150,587.95 from the Navy.

On February 2, 1994, the contracting officer issued a final decision denying the majority of ESCI's Contract I claim, but concluding that ESCI was entitled to $10,869.00. Pursuant to the Contract Disputes Act (CDA), 41 U.S.C. § 606 (2006), ESCI appeal-

---

**1.** Although plaintiff names the Prompt Payment Act in the complaint at Count II, plaintiff does not cite to 31 U.S.C. §§ 3901–3907 (2006), which provides for pre-dispute interest, but instead cites to 41 U.S.C. § 611 (2006), which is the Contract Dispute Act (CDA) interest statute, and to 28 U.S.C. § 1961 (2006), which provides for interest on judgments rendered against the United States.

ed the contracting officer's final decision (COFD) on Contract I to the ASBCA (ASBCA Case No. 47498), requesting recovery for increased costs, *quantum meruit* for the reasonable value of services provided, and damages for procurement fraud, bad faith, and conspiracy by the government and its agents. *Id.* at 152,142. The government counter-claimed for an assessment of liquidated damages and also argued that the contracting officer's award of $10,869.00 was in error. *Id.* at 152,147.

The ASBCA decision on Contract I in ASBCA Case No. 47498 contains numerous references to the breakdown of the relationship between Mr. Nwogu and Navy personnel and to the behavior of both parties. The ASBCA opinion also stated:

> This appeal involves a claim for additional costs incurred to remove, transport, and dispose of industrial waste sludge from two lagoons at a Navy facility. Appellant has claimed it encountered conditions that differed from those indicated in the contract and that the Government's failure to cooperate caused its costs to increase. Appellant has also alleged that it is entitled to recovery in *quantum meruit* for reasonable value of services provided and to damages for procurement fraud, bad faith, and a conspiracy by the Government and its agents. The Government maintains that appellant has not established entitlement under any theory. Mr. Nwogu represented the appellant *pro se.* Only entitlement is before us for decision.

*Envtl. Safety Consultants, Inc.,* ASBCA Case No. 47498, 00–1 BCA ¶ 30,826, at 152,-129.

On February 29, 2000, the ASBCA granted the equitable adjustment for "extra work" performed on Contract I, and "improper interference with [ESCI's] performance" by the government. *Id.* at 152,147–48. The Board also indicated that it did not have jurisdiction to address plaintiff's allegations regarding *quantum meruit* or punitive damages. *Id.* at 152,146–47. The ASBCA referred the question of the amount of the

equitable adjustment, and for return of the liquidated damages, for resolution by the parties or referral to the contracting officer for a subsequent decision, with attendant appeal rights. *Id.* at 152,148.

Also relevant to this litigation, the Navy awarded an additional contract to ESCI, Contract No. N62470–95–C–2399, for work in Yorktown, Virginia (Contract II). On June 6, 1998, the contracting officer issued a COFD terminating Contract II for default, based on ESCI's "failure to make progress to ensure timely completion of the work and for other defaults in performance."[2] Subsequent to the termination of Contract II, the Navy awarded Contract No. N62470–98–C–5027 to a reprocurement contractor, to remedy and complete ESCI's work on Contract II. In a December 3, 2001 COFD, the Navy contracting officer issued another appealable, final decision regarding Contract II, holding that ESCI owed the Navy $167,691.75 in reprocurement costs and liquidated damages and demanding payment. In the contracting officer's December 3, 2001 COFD, ESCI was advised that:

> If payment is not received within 30 days from the date you receive this notice, the debt record will be transferred to the Defense Finance & Accounting System [DFAS] for collection. The Federal Acquisition Regulation (FAR) Part 32.6 and Defense Federal Acquisition Regulation (DFAR) 232.6, prescribe the policies and procedures for ascertaining and collecting contract debts, which includes the ability to withhold and set off contractor's debts from monies otherwise due the contractor.

ESCI appealed the COFD on the termination for default of Contact II to the ASBCA (ASBCA Case No. 51722). Plaintiff's Notice of Appeal stated that ESCI "hereby appeals pursuant to the Contract Disputes Act of 1978, each and every aspect of the decision of June 6, 1998 of the Contracting Officer to Terminate the referenced Contract for Default," plaintiff also claimed an equitable adjustment of $334,687.85 for breach of contract, entitlement to additional

---

**2.** The COFD was issued as a modification to Contract II, the Yorktown, Virginia contract

(Modification P00007, dated June 12, 1998).

compensation and specific performance.[3] Defendant filed an answer and partial motion to dismiss in ASBCA Case No. 51722 on Contract II. In ASBCA Case No. 51722, the ASBCA found it had no jurisdiction regarding plaintiff's claim for money damages, due to plaintiff's failure to submit a claim for an equitable adjustment to the contracting officer. Therefore, ASBCA Case No. 51722 appears only to concern the validity of the termination for default in Contract II.

Based on the record before the court, in contrast to the timely appeal from the COFD on the termination for default in Contract II (ASBCA Case No. 51722), it appears that ESCI never timely appealed the contracting officer's assessed reprocurement costs and liquidated damages under Contract II. The plaintiff seems to confirm the limited nature of ASBCA Case No. 51722 when it states, "[t]he only issue in ASBCA No. 51722 is the propriety of default of [Contract II] ... the issue in ASBCA 51722 is [an] equitable non-monetary claim." The defendant has argued that the COFD assessing reprocurement costs and liquidated damages is final and, therefore, "the Navy's set-off is not before the ASBCA."

Subsequently, the plaintiff filed multiple claims with the contracting officer for an equitable adjustment on Contract II. After receiving no COFD, ESCI filed a "deemed denied" claim with the ASBCA regarding its equitable adjustment claim for Contract II, docketed as ASBCA Case No. 54615. *See Envtl. Safety Consultants, Inc.*, ASBCA Case No. 54615, 07–1 BCA ¶ 33,483, at 165,-965 (Jan. 31, 2007). Defendant acknowledges that ESCI presented claims to the contracting officer, on which the contracting officer did not issue a decision and that ESCI treated the absence of a COFD as a deemed denial by the contracting officer. *See* 41 U.S.C. § 605(c)(5) (2006) ("Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter.").

In its January 31, 2007 decision in Case No. 54615, the ASBCA addressed ESCI's claims on Contract II that were before the Board. Even though ESCI had presented some claims to the contracting officer which were not addressed by the contracting officer and, thus, were deemed denied, the ASBCA found that other claims before the Board had never been presented to the contracting officer for review. Those Claims were dismissed by the ASBCA. *id.* at 165,981–82. Furthermore, the Board found that still other claims which ESCI had presented to the Board had not been presented to the contracting officer within six years of when they first accrued and, thus, were time barred. *Id.* at 165,983–86. Furthermore, the Board found that ESCI had never challenged the assessment of liquidated damages and reprocurement costs on Contract II, and that such assessments were, therefore, not before the Board. The Board also found that ESCI's challenge to the default termination of Contract II was not before the Board in Case No. 54615, but was pending before the Board in Case No. 51722. *Id.* at 165,979, 165,986. Finally, the Board denied ESCI's motion for sanctions against the government, as being without any demonstrated basis. *Id.* at 165,-986. Having disposed of ESCI's Contract II claims, other than the default termination of Contract II, which is before the Board in Case No. 51722, the Board dismissed all of ESCI's claims in Case No. 54615 in their entirety, with prejudice. *Id.*

To date, ESCI has not paid the assessment for reprocurement costs and liquidated damages contained in the December 3, 2001 COFD on Contract II. In a Febru-

---

3. The court notes that the plaintiff ESCI (and Mr. Nwogu) have filed another case in this court, assigned to a different Judge (Case No. 10–191C). Among other claims, the second case asserts claims with respect to the Yorktown, Virginia contract, Contract II, including breach of contract, improper assessment of liquidated damages, and a Fifth Amendment takings claim.

On the intake "Cover Sheet" filled out by plaintiff's attorney and filed with the complaint in Case No. 10–191C, the box which asks "Is this case directly related to any proceeding or previous case?", the box marked "No" was filled out with an "x," even though the above captioned case, No. 09–268C, was pending.

ary 19, 2002 letter to ESCI, the Navy stated that ESCI had not made payment on the contracting officer's reprocurement costs and liquidated damages assessment from Contract II and advised ESCI that the government intended to transfer the debt, plus interest, to DFAS for collection action, to include setoff action, that is, collecting the "debt from monies due you on other Government Activity contracts." In a March 28, 2002 letter from the Navy to DFAS, subject: "DEBT COLLECTION ACTION FOR CONTRACT DEBTS," the Navy transferred the $167,691.75 debt the government believed it was owed by ESCI to DFAS. In an August 11, 2009 letter to ESCI, DFAS notified ESCI that it had setoff ESCI's Contract I ASBCA judgment of $93,989.00, plus CDA interest of $92,223.90, as of June 26, 1992, against the $167,691.75, plus Debt Collection Act interest of $62,488.68, see 31 U.S.C. § 3717 (2006), which the contracting officer had determined ESCI owed the Navy under Contract II. As a result, the government contends that ESCI owes the government more than the government owes ESCI.

When the parties were unable to successfully negotiate the amount of the equitable adjustment on Contract I, ESCI again appealed to the ASBCA (ASBCA Case No. 53485) for a determination of the amount of the equitable adjustment on Contract I. Before the ASBCA determined the equitable adjustment amount in ASBCA Case No. 53485, however, the government notified the Board of its asserted right to setoff against damages awarded in Contract I, as a result of the December 3, 2001 COFD on Contract II, the Yorktown, Virginia contract, assessing reprocurement costs and liquidated damages. *See Envtl. Safety Consultants, Inc.,* ASBCA Case No. 53485, 02-2 BCA ¶ 31,904, at 157,-612-13 (June 26, 2002). In ASBCA Case No. 53485 (the case on the amount of the equitable adjustment for Contract I), ESCI objected and moved to strike any setoff action, alleging it was "immaterial, irrelevant, and contain[s] scandalous and prejudicial matter,"

as well as "retaliation for the entitlement litigation [on Contract I]." *Id.* at 157,612. Although the ASBCA acknowledged the government's common law right of setoff,[4] the Board granted ESCI's motion to strike any setoff in ASBCA Case No. 53485. The ASBCA stated that it lacked jurisdiction to consider the government's setoff defense in Case No. 53485, because the defense arose "independently" of the Contract I appeal it was then considering. *Id.* At the time, plaintiff also was pursuing ASBCA Appeal No. 51722, seeking to overturn the default termination of Contract II. The government acknowledged that the ruling on the default termination on Contract II could have implications on its setoff action. Case No. 51722 on Contract II is still pending at the ASBCA.

On March 8, 2005, after proceedings described by the Board as "contentious," and evidencing a "failure of the parties to maintain the civility and decorum expected in a Board proceeding," the ASBCA, in a detailed opinion in ASBCA Case No. 53485 on Contract I, awarded ESCI $103,399.00, plus interest, of the $210,492.00 requested by the plaintiff. *See Envtl. Safety Consultants, Inc.,* ASBCA Case No. 53485, 05-1 BCA ¶ 32,903, at 163,006, 163,023 (Mar. 8, 2005). Both parties filed motions for reconsideration, and on September 15, 2005, the ASBCA ordered the Navy to pay ESCI a reduced amount of $93,989.00, plus interest, on Contract I. *See Envtl. Safety Consultants, Inc.,* ASBCA Case No. 53485, 05-2 BCA ¶ 33,073, at 163,937-38 (Sept. 15, 2005). The ASBCA stated that the reduction in the award was due to calculation errors in the earlier opinion. *Id.* at 163,937-38.

On January 13, 2006, the government appealed to the United States Court of Appeals for the Federal Circuit (Case No. 2006-1180) to review the ASBCA's decisions in Case No. 47498 (entitlement), issued on February 29, 2000, and Case No. 53485 (quantum), entered on March 8, 2005 and September 15, 2005. On March 13, 2006, ESCI filed its cross-appeal at the Federal Circuit (Case No.2006-

---

4. The Board stated: "The Government has the common law right of setoff. *United States v. Munsey Trust Co.,* 332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Triad*

*Microsystems, Inc.,* ASBCA No. 48763, 00-1 BCA ¶ 30,876." *Envtl. Safety Consultants, Inc.,* ASBCA Case No. 53485, 02-2 BCA ¶ 31,904, at 157,612.

1292).[5] The defendant took the position that plaintiff's March 13, 2006 appeal to the Federal Circuit of ASBCA Case Nos. 47498 and 53485 was untimely. The Navy, therefore, requested the plaintiff to agree to joint dismissals of the appeals, and indicated that otherwise the Navy would move to dismiss ESCI's cross-appeal as untimely.

On March 28, 2006, the attorneys of record for the government and the plaintiff signed and filed a "JOINT MOTION TO VOLUNTARILY DISMISS APPEAL" and proposed order in each of the two appeals. On March 29, 2006, the United States Court of Appeals for the Federal Circuit dismissed both appeals pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure (providing for voluntary dismissal by agreement of the parties). The Federal Circuit dismissals both state: "The parties having so agreed, it is ORDERED that the proceeding is DISMISSED under Fed. R.App. P. 42(b)." *Winter v. Envtl. Safety Consultants, Inc.*, No. 2006–1180 (Fed.Cir.2006); *Envtl. Safety Consultants, Inc., v. Winter*, No.2006–1292, 178 Fed.Appx. 3 (Fed.Cir.2006).

ESCI states that plaintiff's attorney "engaged in negotiation settlement" with the government attorney on or about March 15, 2006. According to the plaintiff, during the negotiation, "[t]he parties orally agreed, that upon the dismissal of the appeals, [the Department of Justice attorney] would fax forms for judgment payment to [plaintiff's attorney]." Also according to the plaintiff, ESCI was to complete the forms and mail them, together with a "certificate of finality," to the government for prompt payment of the $93,989.00 awarded by the ASBCA on Contract I. According to the plaintiff, based on this alleged, oral agreement for prompt payment, ESCI agreed to a joint dismissal of the appeals in the United States Court of Appeals for the Federal Circuit, which occurred on March 29, 2006. After both ap-

peals were dismissed, the plaintiff states that, on July 19, 2006, it mailed the certificate of finality and other requested documents to the government, but received no response.[6] Plaintiff also states that it did not receive a response from the ASBCA after forwarding the same documents to the Board.

The defendant assertively states that "there was no agreement, oral or written, between ESCI and the Government, other than the agreement that the parties would file joint stipulations of dismissal in both appeals," and no settlement agreement document is in the record before the court. The defendant also indicated that after diligently searching and contacting the Department of Justice attorney of record in the cases before the Federal Circuit, the Department of Justice has been unable to find a copy of the certificate of finality in the Department of Justice files. Moreover, the Department of Justice attorney of record does not recall seeing a copy of a certificate of finality, and recalls only sending a copy of the draft stipulations of dismissal to ESCI's counsel.

In the current lawsuit, ESCI is attempting to enforce in this court the $93,989.00 ASBCA judgment, plus interest of $176,416.20, issued by the ASBCA on September 15, 2005, plus another $56,544.72 in postjudgment interest, and a *quantum meruit* recovery of $128,588.00 (which ESCI also lists elsewhere in the complaint as $129,588.00) on Contract I. Plaintiff also includes in its complaint a breach of contract claim, various allegations of discriminatory behavior on the part of government officials, and a Fifth Amendment takings claim.

In response to the plaintiff's complaint in this court, the government moves to dismiss certain claims in the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). The gov-

---

5. Although the plaintiff contends that it filed its cross-appeal on February 10, 2006, the official docket in the United States Court of Appeals for the Federal Circuit indicates that while plaintiff's attorney signed the paperwork for the notice of appeal on that date, the notice of the appeal actually was filed and docketed by the Federal Circuit on March 13, 2006.

6. The record suggests that approximately more than three and one-half months after the March 28, 2006 joint stipulations of dismissal were filed in the Federal Circuit, a certificate of finality apparently was sent to Navy agency counsel.

ernment asserts that this court lacks subject matter jurisdiction to entertain claims pursuant to 42 U.S.C. § 1983 ("Civil action for deprivation of rights"), the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, the Thirteenth Amendment, for *quantum meruit* and for punitive damages. The government moves to dismiss ESCI's breach of contract claim on Contract I, because the claim was the subject of an ASBCA decision, and also because the claim is barred by the statute of limitations applicable for filing a CDA complaint in this court after the contractor's receipt of a COFD. At this time, defendant also asserts the defense of setoff on the award to ESCI of the $93,989.00, plus interest on Contract I (the Warminster, Pennsylvania contract), due to damages the contracting officer determined ESCI owes the Navy on ESCI's default of Contract II (the Yorktown, Virginia contract). Finally, defendant argues that ESCI's takings claim must fail as not identifying any constitutionally protected property interest.

## DISCUSSION

I. **Defendant's motion to dismiss for lack of subject matter jurisdiction.**

■■■ The defendant moves to dismiss a number of plaintiff's claims based on a lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).[7] "Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte.*" *Folden v. United States,* 379 F.3d 1344, 1354 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir.2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d 1338, 1346 (Fed.Cir.2008); *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v.*

*United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (Fed.Cir.1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir. 1991); *Thompson v. United States,* 88 Fed. Cl. 263, 266 (2009); *North Star Alaska Hous. Corp. v. United States,* 76 Fed.Cl. 158, 185, *appeal dismissed,* 226 Fed.Appx. 1004 (Fed. Cir.2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990)); *see also Entegris, Inc. v. Pall Corp.,* 490 F.3d 1340, 1343 (Fed.Cir.2007); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.").

■■■ Pursuant to this court's rules and Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2); Fed.R.Civ.P. 8(a)(1), (2). *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* — U.S. —, — – —, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555–57, 570, 127 S.Ct. 1955). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir.1997); *see also Edelmann v. United States,* 76 Fed.Cl. 376, 379 (2007), *transferred* (due to lack of juris-

---

7. Initially, the government also asserted that Mr. Nwogu (who, according to the complaint, is "the founder, owner, President, and Project Manager of ESCI,") could not represent ESCI, a corporation, because Mr. Nwogu, although he may be the holder of a J.D. degree, does not appear to be licensed to practice and is not admitted to prac-

tice in this court. *See* RCFC 83.1(a)(3) (stating that an "individual who is not an attorney may represent oneself ... but may not represent a corporation, an entity, or any other person in any proceeding before this court."). The issue is now moot since ESCI subsequently obtained counsel.

diction), No. 4:07CV00633, 2007 WL 4287825 (E.D.Ark. Dec. 6, 2007). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir.1998); *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1363 n. 9 (Fed. Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed.2004)); *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). As stated in *Ashcroft v. Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atlantic Corp. v. Twombly*,] 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States*, 119 F.3d 1576, 1580 (Fed.Cir. 1997)), *cert. denied*, 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir. 2000).

The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2006). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims against the United States, (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on Federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Greenlee County, Ariz. v. United States*, 487 F.3d 871, 875 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir.2007), *cert. denied*, 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States...." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d at 1343 ("[P]laintiff must ... identify a substantive source of law that creates the right to recovery of money damages against the United States."). To prove that a statute or regulation is money-mandating, plaintiff must demonstrate that an independent source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961 (quoting *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948 and *Eastport Steamship*

Corp. v. United States, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)); see also Hamlet v. United States, 63 F.3d 1097, 1107 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed.Cir.1995), cert. denied, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). "Additionally, the specific authority granting money relief must be distinct from the Tucker Act itself." Cottrell v. United States, 42 Fed.Cl. 144, 152 (1998). "If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." Fisher v. United States, 402 F.3d 1167, 1173 (Fed.Cir.2005); see also Doe v. United States, 74 Fed.Cl. 794, 796 (2006).

**A. Subject matter jurisdiction is not vested in this court to address the merits of plaintiff's National Origin Discrimination, Due Process, Equal Protection, and Thirteenth Amendment claims.**

In Count I of its complaint in this court, the plaintiff, Mr. Nwogu and plaintiff's attorney assert that the government engaged "in a pattern and practice of intentional racism, national origin, small disadvantaged, economic hardship discrimination through exceptionally [sic] delays and by prolonging the payment of work performed in 1991, some eighteen (18) years ago." Additionally, the plaintiff, Mr. Nwogu and plaintiff's attorney claim that the government and its agents refused to negotiate in good faith and that this behavior was "accomplished under the color of governmental instrument of racism, hate and abuse of power, and denial of rights." According to the complaint, these patterns of discrimination were in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, the Thirteenth Amendment and 42 U.S.C. § 1983. The complaint alleges that Mr. Nwogu and ESCI "suffered and continue to suffer financial and emotional harm, costs and litigation fees to be proved at trial."

This court does not have jurisdiction to review plaintiff's Fifth Amendment Due Process claims. In Crocker v. United States, the United States Court of Appeals for the Federal Circuit wrote: "The Court of Federal Claims correctly concluded that it does not have jurisdiction to hear Crocker's due process ... claims under the Fifth Amendment to the United States Constitution." Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir.1997); see also In re United States, 463 F.3d 1328, 1335 n. 5 (Fed.Cir.2006) (" 'Because the Due Process Clause of the Fifth Amendment is not a money-mandating provision of the Constitution, see Mullenberg v. United States, 857 F.2d 770, 773 (Fed.Cir. 1988),' ") the Court of Federal Claims lacks jurisdiction to hear the claim. (quoting Scholl v. United States, 69 Fed.Cl. 393, 395 (2005)), reh'g and reh'g en banc denied (Fed.Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940, 128 S.Ct. 50, 169 L.Ed.2d 243 (2007); Murray v. United States, 817 F.2d 1580, 1583 (Fed.Cir.1987) (noting that the Fifth Amendment's Due Process Clause does not include language mandating the payment of money damages); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause [of the Fifth Amendment] does not obligate the government to pay money damages." (citing Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir.1989)), reh'g denied (Fed.Cir.1995)). Therefore, the Court of Federal Claims does not have jurisdiction over the Fifth Amendment Due Process claims raised in plaintiff's complaint.

Similarly, the Due Process Clause of the Fourteenth Amendment does not invoke the jurisdiction of the Court of Federal Claims because it does not mandate payment of money by the government. See Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1308 (Fed.Cir.2007); LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed.Cir.1995); Smith v. United States, 51 Fed.Cl. 36, 38 (2001), aff'd, 36 Fed.Appx. 444 (Fed.Cir.), reh'g denied, 42 Fed.Appx. 469 (Fed.Cir.), cert. denied, 537 U.S. 1010, 123 S.Ct. 505, 154 L.Ed.2d 412 (2002). Therefore, the Court of Federal Claims does not have jurisdiction over the Fourteenth Amendment Due Process claims raised in plaintiff's complaint.

■ Likewise, the Equal Protection Clause of the Fourteenth Amendment does not mandate the payment of money by the federal government and, therefore, the United States Court of Federal Claims does not have jurisdiction over the plaintiff's Fourteenth Amendment equal protection claims. *See LeBlanc v. United States,* 50 F.3d at 1028 ("His complaint included counts alleging violation of his rights under the ... Equal Protection Clause of the Fourteenth Amendment," an insufficient basis for jurisdiction because it does not mandate payment of money by the government. (citing *Carruth v. United States,* 224 Ct.Cl. 422, 627 F.2d 1068, 1081 (1980))); *see also Schweitzer v. United States,* 82 Fed.Cl. 592, 598 n. 7 (2008) ("To the extent that the plaintiffs allege violations of the equal protection clause of the Fourteenth Amendment ... the equal protection clause does not mandate payment of money by the federal government for its violation, and therefore this court lacks jurisdiction over such claims." (citing *LeBlanc v. United States,* 50 F.3d at 1028)).

■ In Count VI of the plaintiff's complaint, the plaintiff, Mr. Nwogu and plaintiff's attorney also assert that "[t]he Navy through its agents violated Mr. Nwogu's 13th Amendment Constitution [sic] prohibition of slavery." Specifically, the complaint states that, "the Navy made slavery [sic] out of Mr. Nwogu by refusing to pay Mr. Nwogu for the work he performed." Further, the complaint asserts that the Navy "made jokes and humiliated Mr. Nwogu," and treated Mr. Nwogu "as a dirt [sic]." The government, however, correctly responds that this court lacks subject matter jurisdiction to address Thirteenth Amendment claims. *See Schweitzer v. United States,* 82 Fed.Cl. at 598 n. 7 (stating that the Court of Federal Claims lacks jurisdiction to consider Thirteenth Amendment claims, because the constitutional provision does not mandate the payment of money damages for violations); *Johnson v. United States,* 79 Fed.Cl. 769, 774 (2007) (stating that the Court of Federal Claims "cannot entertain claims brought under the Thirteenth Amendment because it does not mandate the payment of money damages for its violation." (citing *Carter v. United States,* 228 Ct.Cl. 898, 900, 902 (1981) and *Hum-*

*phrey v. United States,* 52 Fed.Cl. 593, 598 (2002), *aff'd,* 60 Fed.Appx. 292 (Fed.Cir. 2003))); *Smith v. United States,* 51 Fed.Cl. at 38. Thus, the Court of Federal Claims does not have jurisdiction over the Thirteenth Amendment claims raised in plaintiff's complaint.

■ Regarding the civil rights claims statute cited by plaintiff, 42 U.S.C. § 1983 ("Civil action for deprivation of rights"), exclusive jurisdiction for such civil rights claims resides in the federal district courts. *See* 28 U.S.C. § 1343 (2006); *Hernandez v. United States,* 93 Fed.Cl. 193, 198 (2010) (The Court of Federal Claims "does not have jurisdiction over claims arising under the Civil Rights Act [citing 42 U.S.C. § 1983], as jurisdiction over such claims resides exclusively in the federal district courts."); *McCullough v. United States,* 76 Fed.Cl. 1, 5 (2006) (federal district courts have exclusive jurisdiction over 42 U.S.C. § 1983 claims), *appeal dismissed,* 236 Fed.Appx. 615 (Fed.Cir.), *reh'g denied* (Fed.Cir.), *cert. denied,* 552 U.S. 1050, 128 S.Ct. 675, 169 L.Ed.2d 529 (2007); *Smith v. United States,* 51 Fed.Cl. at 38; *Hanes v. United States,* 44 Fed.Cl. 441, 449 (1999), *aff'd,* 243 F.3d 562 (Fed.Cir.), reh'g *denied* (Fed.Cir.2000); *Blassingame v. United States,* 33 Fed.Cl. 504, 505, *aff'd,* 73 F.3d 379 (Fed.Cir.1995), *reh'g denied* (Fed.Cir.), *cert. denied,* 517 U.S. 1237, 116 S.Ct. 1885, 135 L.Ed.2d 179 (1996). Therefore, jurisdiction over civil rights claims under 42 U.S.C. § 1983 resides in the federal district courts, not in the United States Court of Federal Claims.

In sum, the Court of Federal Claims does not have jurisdiction with respect to plaintiff's due process, equal protection, slavery and civil rights claims, because of the requirement that the source of a claim under 28 U.S.C. § 1491 be money mandating, or because, by statute, Congress has placed exclusive jurisdiction over those claims in federal district court. *See* 28 U.S.C. § 1343; *Hernandez v. United States,* 93 Fed.Cl. at 198; *Zhao v. United States,* 91 Fed.Cl. 95, 99 (2010).

**B. This court lacks subject matter jurisdiction to address plaintiff's claim for *quantum meruit.***

In the second Count III of the complaint, titled "Breach of Contract,"[8] the plaintiff states that ASBCA decisions Nos. 47498 and 53485 regarding Contract I did not address the merits of plaintiff's breach of contract, *quantum meruit*, profits and reliance loss claims, which plaintiff now attempts to raise in this court. The Board stated in ASBCA case No. 47498 that it had "no jurisdiction over appellant's [ESCI's] allegations regarding *quantum meruit.*" *Envtl. Safety Consultants, Inc.*, ASBCA Case No. 47498, 00–1 BCA ¶ 30,826, at 152,146–47 (citing *Cousins Contracting, Inc.*, ASBCA Case No. 50382, 97–1 BCA ¶ 28,906 (finding no jurisdiction over complaint for *quantum meruit* )).

 "*Quantum meruit* is '[a] claim or right of action for the reasonable value of services rendered.'" *United Pacific Inc. Co. v. United States*, 464 F.3d 1325, 1329 (Fed. Cir.2006) (quoting *Black's Law Dictionary* 1276 (8th ed.2004)). The United States Court of Appeals for the Federal Circuit distinguishes two types of *quantum meruit* claims: implied-in-law and implied-in-fact. *See Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317,1325 (Fed.Cir.2007). An implied-in-law contract is

a contract in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice. The Court of Federal Claims, however, lacks jurisdiction over contracts implied in law. 28 U.S.C. § 1491(a)(1) (2000). On the other hand, "[w]here a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a *quantum valebant* or *quantum meruit* basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated under the contract but rather under an implied-in-fact contract." *United Pac. Ins. Co. v.*

*United States*, 464 F.3d 1325, 1329–30 (Fed.Cir.2006).

*Int'l Data Prods. Corp. v. United States*, 492 F.3d at 1325–26; *see also Sanders v. United States*, 252 F.3d 1329, 1334 (Fed.Cir.2001); *Steinberg v. United States*, 90 Fed.Cl. 435, 443 (2009). Thus, the Court of Federal Claims does not have jurisdiction over implied-in-law contract claims, but does have jurisdiction over express and implied-in-fact contracts. An implied-in-fact contract cannot exist, however, where there is an express, written contract, as in the present case. *See Hercules Inc. v. United States*, 516 U.S. 417, 423–24, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (stating that the Tucker Act only extends to express or implied-in-fact contracts, based on a meeting of the minds, and not implied-in-law contracts, and that implied-in-fact contracts are agreements "not embodied in an express contract"); *Perri v. United States*, 340 F.3d 1337, 1343 (Fed.Cir.2003) ("Recovery in *quantum meruit*, however, is based upon a contract implied in law.") (citing *Fincke v. United States*, 230 Ct.Cl. 233, 675 F.2d 289, 296 (1982)); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1326 (Fed. Cir.1997) ("Further, an implied-in-fact contract cannot exist if an express contract already covers the same subject matter." (citing *Atlas Corp. v. United States*, 895 F.2d 745, 754–55 (Fed.Cir.1990), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990) and *Reforestacion de Sarapiqui v. United States*, 26 Cl.Ct. 177, 190 (1992))).

 In the present case, plaintiff alleges that the government refused to pay plaintiff under an express contract (Contract I), after a finding in its favor on Contract I by the ASBCA. Defendant, however, contends that it is justified to setoff the amount owed to plaintiff under Contract I (the Warminster, Pennsylvania contract) against amounts owed to the government by plaintiff on Contract II (the Yorktown, Virginia contract). Plaintiff's claims, therefore, implicate express contracts, not implied-in-fact or implied-in-law contracts. Moreover, the contract related interests of the parties in Contract I have been resolved at the ASBCA, Case Nos.

---

8. There are two Counts numbered III in plaintiff's complaint. The other and first Count III in plaintiff's complaint is titled "Fifth Amendment Taking Clause."

47498 and 53485. Contract II remains under review at the ASBCA on the termination for default issue. The COFD to assess reprocurement costs and liquidation damages on Contract II was not appealed by plaintiff. As is discussed below, plaintiff cannot proceed simultaneously at the ASBCA and in this court. Moreover, to contest an ASBCA decision on the reprocurement costs and liquidated damages plaintiff must have filed a timely appeal either to the Board or to this court, which the plaintiff did not do.

### C. ESCI's breach of Contract I (the Warminster, Pennsylvania contract) claim must be dismissed based on ESCI's election of forum and the CDA 12–month statute of limitations.

In the second Count III of the complaint, titled "Breach of Contract," the plaintiff asserts that the government breached Contract I, "by preventing ESCI and Mr. Nwogu from performing the contract." Further, the plaintiff alleges ASBCA's Contract I decisions, ASBCA Case No. 47498 (entitlement) and ASBCA Case No. 53485 (quantum), which ultimately awarded ESCI $93,989.00, plus interest, did not address the plaintiff's breach of contract, *quantum meruit* or lost profits claims. In Count V of the complaint, plaintiff contends its claims in this court on these issues are timely, in that a six year, Court of Federal Claims statute of limitations under the Tucker Act, 28 U.S.C. § 1491, found at 28 U.S.C. § 2501 (2006), had not expired when ESCI filed its complaint in this court. According to plaintiff, the six year statute of limitations ESCI argues applies had been tolled by plaintiff's pursuit of its claims before the ASBCA.

Plaintiff's complaint was filed in the Court of Federal Claims on April 28, 2009. Plaintiff contends that the limitation period did not expire in 2000, six years from issuance of the COFD on February 2, 1994 on Contract I (the Warminster, Pennsylvania contract), but rather six years from the conclusion of administrative Board proceedings (in this case at the ASBCA) on September 15, 2005, regarding which an April 28, 2009 complaint would be timely. Plaintiff, however, is for-

getting the CDA 12–month statute of limitations applicable in breach of contract cases. The applicable statute of limitations for actions brought under the CDA at the United States Court of Federal Claims is set out in 41 U.S.C. § 609(a)(1), (3) (2006), and allows 12 months from the date of receipt of the COFD to file a complaint in the United States Court of Federal Claims.

In this case, plaintiff made an election of forum in 1994, and a timely election, to initiate its appeal upon receipt of the COFD on Contract I at the ASBCA (ASBCA Case No. 47498). ESCI had 90 days from the date of receipt of the COFD to appeal to the ASBCA, and did so. *See* 41 U.S.C. § 606. Instead of appealing to the ASBCA, plaintiff had 12 months from the date of the receipt of the COFD, alternatively, to bring an action in the Court of Federal Claims, but did not do so. *See* 41 U.S.C. § 609(a)(1), (3); *Paradigm Learning, Inc. v. United States*, No. 07–873C, 2010 WL 2425994, at *8 (Fed. Cl. June 14, 2010) ("As an initial matter, an appeal of the contracting officer's decision to the Court of Federal Claims must be filed within a year of its receipt of the decision." (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541 (Fed.Cir.1996) and *Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1576 (Fed.Cir.1987))). The court notes that even if the plaintiff's 12–month CDA clock had begun with the conclusion of ASBCA proceedings on Contract I (the Warminster, Pennsylvania contract), as represented by the ASBCA's quantum decision on September 15, 2005 (ASBCA Case Nos. 47498, 53485), an April 28, 2009, CDA based complaint filed in this court would not have been timely. In addition, plaintiff made its election to proceed at the ASBCA, and the ASBCA ruled. Therefore, plaintiff's breach of contract claims are barred in this court, after plaintiff's election of forum, and having been filed in this court in 2009, far more than 12 months after receiving the COFD on Contract I in 1994.

Plaintiff also made a tolling argument as to this court's general, six year statute of limitations, 28 U.S.C. § 2501, based on the time it took for plaintiff to seek redress of Contract I before the ASBCA.

The United States Supreme Court firmly stated in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008), that the statute of limitations in 28 U.S.C. § 2501 cannot be tolled in this court. *See id.* at 132–35, 128 S.Ct. 750. The Supreme Court indicated that the statute of limitations found at 28 U.S.C. § 2501 sets forth an "absolute" time limit, *id.* at 135, 128 S.Ct. 750, which is not subject to tolling against the United States. However, in breach of contract cases, the CDA statutes of limitation control. Pursuant to the Contract Disputes Act, claims by a contractor shall be submitted to the contracting officer for a final decision within six years of the accrual of the claim. *See* 41 U.S.C. § 605(a) (2006). As to tolling this statute, the United States Court of Appeals for the Federal Circuit recently stated that 41 U.S.C. § 605(a) is subject to tolling and distinguished the *Sand* case. *See Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 798–800 (Fed.Cir.2009), *reh'g and reh'g en banc denied* (Fed.Cir.), *cert. denied*, —— U.S. ——, 130 S.Ct. 3505, —— L.Ed.2d —— (2010); *see also Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 523, 529–31 (D.C.Cir.2010) (following *Arctic Slope* in concluding that section 605(a) is subject to tolling). Under the facts and circumstances of the present case, however, plaintiff does not warrant tolling of the CDA's section 605(a), for plaintiff's time to file a claim with the contracting officer on Contract I accrued in March 1992, when plaintiff and the Navy executed a bilateral modification terminating Contract I. Within three months, in June 1992, plaintiff submitted a claim to the contracting officer, well within the six years prescribed by section 605(a) of the CDA.

The second pertinent CDA statute of limitations is the 12 months contractors have after receiving a COFD to file a complaint in the Court of Federal Claims, as opposed to 90 days to the Boards of Contract Appeals. *See* 41 U.S.C §§ 606, 609(a)(1), (3). Since the Federal Circuit's comprehensive, equita-

ble tolling analysis on 41 U.S.C. § 605(a) (6 years to file a claim with the contracting officer) in *Arctic Slope*, the Federal Circuit has not squarely addressed whether 41 U.S.C. § 609(a) (12 months after receipt of the COFD to file a complaint in this court) is subject to tolling. *See Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d at 798 (applying a rebuttable presumption in favor of equitable tolling as to section 605(a): "the Irwin presumption applies, which means that we must assume that Congress intended equitable tolling to be available unless there is good reason to believe otherwise." (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990))). However, even if the Federal Circuit were to apply the *Irwin* rebuttable presumption in favor of equitable tolling to 41 U.S.C. § 609(a),[9] under the facts and circumstances of the present case, tolling, based on plaintiff's choice of forum to file an appeal with the ASBCA, is not available. The ASBCA made an award to plaintiff on September 15, 2005 in Contract I, based on plaintiff's election of forum, and plaintiff filed its complaint in this court on April 28, 2009, over three years later. Thus, plaintiff not only made its election of forum (the ASBCA), from which there is no appeal to this court, but plaintiff did not file in this court within the requisite 12 months, even under the untenable theory that the filing deadlines in his case should have been tolled up to and including the date the ASBCA issued its final decision in his case on Contract I. Plaintiff fails on both issues, election of forum and the applicable 12–month, CDA statute of limitations.

 Also dispositive in the case before this court, once plaintiff made an election of forum to pursue its appeal of a COFD on Contract I and II at the ASBCA, it could not pursue an appeal of the same COFDs in this court. According to the United States Court of Appeals for the Federal Circuit, which reviews appeals from this court, as well as from the Boards of Contract Appeals:

---

9. Prior to *Arctic Slope*, addressing 41 U.S.C. § 609(3), the Federal Circuit in *Borough of Alpine v. United States*, 923 F.2d 170, 172 (Fed.Cir. 1991), stated, "Congress has set the twelve-months limit, and this court cannot and should

not read into it exceptions and tolling provisions Congress did not contemplate or authorize." (citing *Gregory Lumber Co. v. United States*, 229 Ct.Cl. 762, 763 (1982)).

It is well established that, pursuant to the Contract Disputes Act, a contractor wishing to contest an adverse final decision by the contracting officer either may appeal the contracting officer's adverse decision to the appropriate board of contract appeals or may contest the contracting officer's decision directly to the Claims Court [Court of Federal Claims]. This choice has given rise to a body of jurisprudence known as the "Election Doctrine."

. . .

■ Once a contractor makes a binding election under the Election Doctrine to appeal the contracting officer's adverse decision to the appropriate board of contract appeals, that election must stand and the contractor can no longer pursue its claim in the alternate forum. Under the Election Doctrine, the binding election of forums is an "either-or" alternative, and, as such, does not provide a contractor with dual avenues for contesting a contracting officer's diverse decision.

*Nat'l Neighbors, Inc. v. United States,* 839 F.2d 1539, 1541–42 (Fed.Cir.1988) (citing *Tuttle/White Constructors, Inc. v. United States,* 228 Ct.Cl. 354, 361, 656 F.2d 644, 647, 649 (1981) (footnote omitted)). This rule was reiterated in *Texas Health Choice, L.C. v. Office of Personnel Management,* in which the Federal Circuit stated:

> The CDA provides alternative forums for challenging a [contracting officer's] final decision: a contractor may file an appeal with the appropriate board of contract appeals, 41 U.S.C. § 606 (1988), or appeal directly to the Court of Federal Claims, 41 U.S.C. § 609(a)(1) (Supp. V 1993). Courts have consistently interpreted the CDA as providing the contractor with an either-or choice of forum.

*Texas Health Choice, L.C. v. Office of Pers. Mgmt.,* 400 F.3d 895, 899 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2005); *see also Paradigm Learning, Inc. v. United States,* 2010 WL 2425994, at *8 ("Thus, if a contractor makes an informed, knowing, and voluntary decision to pursue its appeal in another forum with jurisdiction over the appeal, the Court of Federal Claims is required

to dismiss a subsequently filed appeal concerning the same claim for lack of jurisdiction." (citing *Bonneville Assocs. v. United States,* 43 F.3d 649, 655 (Fed.Cir.1994))); *Am. Telecom Corp. v. United States,* 59 Fed. Cl. 467, 471 (2004) ("The 'in lieu of' language in section 609(a) clearly indicates that the contractor has a choice of forums but does not allow the contractor to pursue its claims before both forums." (citing *Tuttle/White Constructors, Inc. v. United States,* 228 Ct. Cl. at 361, 656 F.2d at 649)). For a complainant's choice of forum to bar subject matter jurisdiction in the unselected forum, the reviewing forum must have had jurisdiction over the original claims. *See Bonneville Assocs., Ltd. P'shp. v. Barram,* 165 F.3d 1360, 1362 (Fed.Cir.) (citing *Bonneville Assocs. v. United States,* 43 F.3d at 653), *cert. denied,* 528 U.S. 809, 120 S.Ct. 40, 145 L.Ed.2d 37 (1999).

■ In addition to plaintiff having made a clear election to litigate its Contract I (the Warminster, Pennsylvania contract) claims at the ASBCA, ESCI's equitable adjustment claims on Contract I were fully considered, and reconsidered, by the ASBCA. *See Envtl. Safety Consultants, Inc.,* ASBCA Case No. 47498, 00–1 BCA ¶ 30,826, at 152,-128 (entitlement) and *Envtl. Safety Consultants, Inc.,* ASBCA Case No. 53485, 05–2 BCA ¶ 33,073, at 163,937–38 (reconsideration was denied by the Board, but errors in computing quantum corrected). Specifically, the Board considered ESCI's equitable adjustment claim for extra work, *Envtl. Safety Consultants, Inc.,* ASBCA Case No. 47498, 00–1 BCA ¶ 30,826, at 152,143; the claim for the government's failure to cooperate, *id.* at 152,144; whether there was bad faith or abuse of discretion on the part of the contracting officer as alleged by the plaintiff, *id.* at 152,146; plaintiff's allegations of government misconduct, bad faith and conspiracy, *id.* at 152,147; and claims of government interference with ESCI's performance, *id.* at 152,147. The Board found that it lacked jurisdiction to decide ESCI's *quantum meruit* claims, *id.* at 152,146–47. As discussed above, the Court of Federal Claims, like the ASBCA, has no jurisdiction over implied-in-law, *quantum meruit* claims. The Board

also stated it had no ability to award punitive damages against the government, *id.* at 152,-147, nor does this court, since the government has not waived its sovereign immunity with regard to punitive damages. *See Greene v. United States*, 65 Fed.Cl. 375, 379 (2005) (citing *Garner v. United States*, 230 Ct.Cl. 941, 943 (1982) and *Vincin v. United States*, 199 Ct.Cl. 762, 468 F.2d 930, 932 (1972)), *recons. denied*, No. 03–1677C, 2007 WL 5161751 (Fed.Cl. Apr.2, 2007) and 2009 WL 515104 (Fed.Cl. Feb.27, 2009). ESCI has not identified any of its claims before this court that either were not before the ASBCA, or that did not arise out of the same operative facts underlying Contract I and that could not have been brought before the Board, save for plaintiff's takings claim, addressed below.

"[T]he history of the CDA makes clear that the statute is not designed to alter the usual rules of res judicata." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1268 (Fed.Cir.), *reh'g denied* (Fed.Cir. 2008). "Congress definitely rejected the idea that the CDA was abrogating the doctrine of claim preclusion and permitting the splitting of claims based on the same set of transactional facts." *Id.* at 1270 (footnote omitted). According to the United States Court of Appeals for the Federal Circuit, the general rule is that, "all claims arising out of the same contract constitute the same claim for purposes of res judicata," assuming jurisdiction is properly lodged in the first forum in which the claims are heard. *Id.* at 1273; *see also Paradigm Learning, Inc. v. United States*, 2010 WL 2425994, at *8 ("In addition, the contractor's appeal must 'arise from the same operative facts' and seek 'essentially the same relief' as the claim submitted to the contracting officer." (quoting *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed.Cir.2003))). ESCI elected its forum, and that forum, the ASBCA, addressed ESCI's Contract I claims. Furthermore, ESCI did not file a claim in this court on Contract I within the applicable 12–month CDA statute of limitations from the date of the COFD.

The plaintiff further alleges that the government failed to provide prompt payment

on the ASBCA, Contract I decision (ASBCA Case No. 53485) in accordance with what plaintiff alleges was an agreement to dismiss its appeals at the United States Court of Appeals for the Federal Circuit. On January 13, 2006, the government appealed ASBCA's Contract I entitlement and quantum judgments (ASBCA Case Nos. 47498 and 53485) in favor of ESCI to the United States Court of Appeals for the Federal Circuit. On March 13, 2006, the cross-appeal from the plaintiff was docketed. On March 29, 2006, the United States Court of Appeals for the Federal Circuit dismissed both appeals. *Winter v. Envtl. Safety Consultants, Inc.*, No. 2006–1180; *Envtl. Safety Consultants, Inc., v. Winter*, No.2006–1292, 178 Fed.Appx. 3.

The plaintiff alleges that the Court of Appeals' dismissals in both cases were the product of an oral agreement between the parties. ESCI states that it "engaged in negotiation settlement" with the government on or about March 15, 2006. According to the plaintiff, during the negotiation, "[t]he parties orally agreed that, upon the dismissal of the appeals, [the Department of Justice attorney] would fax forms for judgment payment to [plaintiff's attorney]." Plaintiff alleges that the parties orally agreed that upon receipt of that form, plaintiff would "complete the form and mail the certificate of finality to the government for prompt payment pursuant to 41 USC § 612(a)" (providing for prompt payment of agency board decisions). Plaintiff also alleges that, based on the oral agreement of the parties, ESCI agreed to join in the dismissal of the appeals from the United States Court of Appeals for the Federal Circuit. After the Federal Circuit dismissed the appeals on March 29, 2006, the plaintiff states the certificate of finality and other requested documents were mailed to the government on July 19, 2006, but plaintiff received no response. Plaintiff also states that it did not receive a response from the ASBCA after forwarding the same documents to the Board.

Defendant argues, however, that ESCI's March 13, 2006 cross-appeal to the Federal Circuit was untimely, because plaintiff's filing occurred more than 120 days after receipt of

the ASBCA decision on September 15, 2005.[10] *See* 41 U.S.C. § 607(g)(1)(A) (2006) (stating that "a contractor may appeal [agency board of contract appeals] decision[s] to the United States Court of Appeals for the Federal Circuit within one hundred twenty days after the date of receipt of a copy of such decision...."). The defendant further states that the government, therefore, requested the plaintiff to agree to joint dismissals of the appeals, or indicated that the Navy would move to dismiss ESCI's appeals as untimely. In fact, the official Court of Appeals for the Federal Circuit docket sheets do not support plaintiff's conclusion that plaintiff had filed timely appeals to the Federal Circuit. Defendant, therefore, had a reasonable basis to urge plaintiff to join in the joint dismissals, or be faced with responding to a motion to dismiss to be filed by the government. On March 29, 2006, the Federal Circuit dismissed both parties' appeals, simply stating in both cases, "[t]he parties having so agreed, it is ORDERED that the proceeding is DISMISSED under Fed. R.App. P. 42(b)." *Winter v. Envtl. Safety Consultants, Inc.,* No. 2006–1180; *Envtl. Safety Consultants, Inc., v. Winter,* No.2006–1292, 178 Fed.Appx. 3.

■ Defendant states that "there was no agreement, oral or written, between ESCI and the Government, other than the agreement that the parties would file joint stipulations of dismissal in both appeals." Nor does the record contain evidence of any agreement as described by plaintiff. The divergence that exists between the parties in this case as to the basis for joint dismissals of the appeals is the reason that purported settlement agreements should be reduced to writing, signed and dated. Oral agreements are subject to different perspectives, fading memories, and provide no documentation of a meeting of the minds of the parties on the

existence or terms of such an alleged agreement. In this case, there was no evidence of a meeting of the minds of the parties on plaintiff's critical elements, that the government would not pursue the setoff and that plaintiff forthwith would be paid $93,989.00, plus interest, awarded to plaintiff by the ASBCA on Contract I (the Warminster, Pennsylvania contract), in exchange for plaintiff dismissing the Federal Circuit appeals.

■ Plaintiff has the burden to demonstrate that there was an agreement and that defendant breached it. *See Stovall v. United States,* 94 Fed.Cl. 336 (Fed.Cl. 2010) (in breach of settlement agreement cases, as in any claim for breach of contract, plaintiff must establish that a valid contract existed between the plaintiff and the government) (citing *San Carlos Irr. and Drainage Dist. v. United States,* 877 F.2d 957, 959 (Fed.Cir. 1989)). Plaintiff has not demonstrated the existence of the alleged agreement, nor that there was a meeting of the minds on the critical elements of the alleged agreement, or that any individual with the requisite authority consented to such an agreement on behalf of the government. *See La Van v. United States,* 382 F.3d 1340, 1346 (Fed.Cir.2004) ("The exchanges between the Government and the Acquirors constitute a[n] [implied-in-fact] contract only if three elements are met: 'mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.'" (quoting *Cal. Fed. Bank v. United States,* 245 F.3d 1342, 1346 (Fed.Cir.2001) (quoting *Massie v. United States,* 166 F.3d 1184, 1188 (Fed.Cir. 1999)))), *reh'g denied* (Fed.Cir.2004); *see also Atlas Corp. v. United States,* 895 F.2d at 754 (in light of the surrounding circumstances no meeting of minds on a critical term of an alleged implied-in-fact contract was found).

---

**10.** Plaintiff states that its cross-appeal was timely, having been filed on February 10, 2006. Plaintiff cites to a February 10, 2006 Entry of Appearance by plaintiff's counsel, and to an undated Notice of Appeal. However, the Federal Circuit docket sheet for Case No.2006–1292 shows plaintiff's cross-appeal was filed on March 13, 2006, not the Entry of Appearance date of plaintiff's attorney on February 10, 2006. Further, an ASBCA docket sheet shows that plaintiff received the ASBCA's September 15, 2005 opinion (ASBCA Case No. 53485) on October 1, 2005. Plaintiff had 120 days from October 1, 2005 to file an appeal, *see* 41 U.S.C. § 607(g)(1)(A), so that plaintiff's appeal had to be filed by January 29, 2006. Therefore, not only was plaintiff's claimed Notice of Appeal filing date of February 10, 2006 untimely, but plaintiff's actual March 13, 2006 Notice of Appeal filing date at the Federal Circuit certainly was untimely.

The record before this court is devoid of support for the sort of agreement plaintiff conjures. Nor is such an agreement plausible or credible. At the time, defendant believed plaintiff owed defendant monies on Contract II (the Yorktown, Virginia contract), having pursued, through proper channels, a setoff action on the COFD assessing reprocurement costs and liquidated damages on Contract II, which plaintiff had not appealed. As noted above, a written, signed and dated agreement could have assisted plaintiff to support its view of what happened, but the record does not contain such a document, and defendant has offered a contrary, and reasonable, view of the facts. It is not likely that the government would, or even could, have agreed to the critical terms of plaintiff's alleged agreement. Payment of an ASBCA award is not within the normal parameters of Department of Justice authority, with whom plaintiff alleges the agreement was made. Agency counsel, who would have handled the cases at the ASBCA, likely would not have had authority to forego the government setoff claim in return for dismissing untimely appeals to the Federal Circuit.

Further inquiry would not change this court's conclusion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (posing the test as whether, in a summary judgment, the issues are so one sided that one party must prevail as a matter of law, or whether there is evidence on which the fact finder could reasonably find for the plaintiff, under a preponderance of the evidence standard); *Long Island Sav. Bank v. United States*, 503 F.3d 1234, 1243–44 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2007), *cert. denied*, — U.S. —, 129 S.Ct. 38, 172 L.Ed.2d 19 (2008). Once the defendant has carried its burden of going forward with the evidence and provided a reasonable, compelling response, plaintiff cannot rest on mere allegations. In this case, the record reflects that, based on the Federal Circuit's docket, plaintiff's appeal to the Federal Circuit was untimely, and dismissal was appropriate. In addition, defendant had no reason to enter into the alleged agreement and has responded to plaintiff's allegations by offering the recollections of the Department of Justice attorney of record in the Federal Circuit appeals that she had not entered into any such agreement.

**D. ESCI's enforcement of an ASBCA monetary judgment claim must be dismissed, because ASBCA final decisions only can be reviewed by the United States Court of Appeals for the Federal Circuit.**

 In Count IV of the complaint, the plaintiff "asks for enforcement of the [ASBCA] judgment in the amount of $93,989, plus interest. . . ." This court cannot review or enforce decisions of the ASBCA; such decisions can only be reviewed by the United States Court of Appeals for the Federal Circuit. *See* 41 U.S.C. § 607(g)(1)(A); *LAI Services, Inc., v. Gates*, 573 F.3d 1306, 1310 (Fed.Cir.) (stating that, "We [the United States Court of Appeals for the Federal Circuit] have jurisdiction over final decisions of the ASBCA under 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 607(g)(1)"), *reh'g denied* (Fed.Cir.2009); *Placeway Constr. Corp. v. United States*, 713 F.2d 726, 727 (Fed.Cir. 1983) (stating that under the CDA, "a decision of an agency board of contract appeals is final unless the contractor appeals to the United States Court of Appeals for the Federal Circuit. . . ."); *AAAA Enters., Inc. v. United States*, 10 Cl.Ct. 191, 194 (1986) (stating that a suit in the United States Claims Court, now the United States Court of Federal Claims, is prohibited after the ASBCA has rendered a decision on the matter, and plaintiff may only appeal the ASBCA's decision to the United States Court of Appeals for the Federal Circuit); *Opalack v. United States*, 5 Cl.Ct. 349, 361 n. 3 (1984). Thus, to the extent the plaintiff is asking this court to review and enforce a monetary judgment of the ASBCA, the claim must be dismissed.

**II. The government's right of setoff.**

Against the plaintiff's claims for $93,989.00, plus interest, the government asserted at the ASBCA, and again in this court, that it is entitled to its timely defense of setoff in its response to plaintiff's claims. *See IML Freight, Inc. v. United States*, 225 Ct.Cl. 393,

398, 639 F.2d 676, 679 (1980); *Fid. and Cas. Co. of N.Y. v. United States*, 174 Ct.Cl. 1269, 1269–70 (1966); *Principal Life Ins. Co. v. United States*, 76 Fed.Cl. 326, 327 (2007). Defendant asserts its right to a setoff against the ASBCA award to plaintiff on Contract I (the Warminster, Pennsylvania contract) as a result of defendant's determined entitlement to reprocurement costs and liquidated damages on Contract II (the Yorktown, Virginia contract).

Contract II was terminated for default in June 1998, and plaintiff appealed the default termination to the ASBCA in ASBCA Case No. 51722. Subsequently, in a second COFD on Contract II, in December 2001, the contracting officer assessed reprocurement costs and liquidated damages on Contract II. This time, plaintiff did not appeal the COFD assessment of reprocurement costs and liquidated damages to the ASBCA. Defendant's reprocurement costs and liquidated damages on Contract II, assessed against plaintiff, are the basis for the setoff against plaintiff's ASBCA award on Contract I. On March 28, 2002, the Navy sent these costs and damages to the Defense Finance and Accounting Service (DFAS) for debt collection action. After the present suit was filed on April 28, 2009, defendant inquired as to the status of the setoff action. DFAS had no record of the setoff action having been taken, and proceeded, on August 11, 2009, to take formal setoff action. On August 12, 2009, defendant filed a response to the plaintiff's complaint in the present case, asserting, among other arguments, a setoff defense.

The plaintiff contends that the ASBCA previously had denied the government's assertion of its right of setoff in ASBCA Case No. 53485. The plaintiff further argues that the government failed to appeal the Board's dismissal of the government's setoff right in the government's appeal to the United States Court of Appeals for the Federal Circuit. Therefore, the plaintiff contends that the defendant's right of setoff is barred by res judicata, as already having been decided by the ASBCA in Case No. 53485. The government, however, correctly states that the 2002, ASBCA, Case No. 53485 decision acknowledged the govern-

ment's right of setoff, but held that the Board lacked jurisdiction in the particular case before it at the time to address the merits of the setoff.

The ASBCA wrote in Case No. 53485:

Under the provisions of the Contract Disputes Act (CDA), we have jurisdiction to consider the appeal of a contracting officer's decision relative to a contract. That jurisdiction does not extend to rights arising independently of the contract [Contract I] that is the subject of an appeal. Claims that may arise for improper withholding under a different contract that is the subject of litigation that is separately docketed are not part of an appeal. In this instance, the Government has claims for reprocurement costs and assessed liquidated damages for delay in completion of a different contract that was terminated for default. The Government has the common law right of setoff. *United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Triad Microsystems, Inc.*, ASBCA No. 48763, 00–1 BCA ¶ 30,876. The Government's allegations pertaining to a right to a setoff are not, however, within the scope of this appeal, and are accordingly, immaterial.

*Envtl. Safety Consultants, Inc.*, ASBCA Case No. 53485, 02–2 BCA ¶ 31,904, at 157,-612.

As the ASBCA indicated in its decision, quoted immediately above, the government's common law right of setoff is well established. *See United States v. Munsey Trust Co.*, 332 U.S. at 239, 67 S.Ct. 1599 ("The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'") (quoting *Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841)); *see also J.G.B. Enters., Inc. v. United States*, 497 F.3d 1259, 1261 (Fed.Cir.2007) ("It is undisputed that the government has the right to offset debts owed to its contractor with a debt owed to it by the same contractor absent explicit contractual, statutory, or regulatory language stating otherwise."); *Johnson v. All–State Constr., Inc.*, 329 F.3d 848,

852 (Fed.Cir.2003) ("This court and our predecessor court have repeatedly recognized the government's right of set-off. The set-off right applies to government claims both under other contracts, and under the same contract.") (citations omitted).

ESCI currently is appealing only one of the two COFDs on Contract II. Specifically, ESCI filed an appeal on the contracting officer's June 1998 termination for default under Contract II, but did not appeal the December 3, 2001 COFD, which assessed $167,691.75 in liquidated damages and reprocurement costs, also on Contract II. On August 11, 2009, the government formally setoff ESCI's Contract I award, plus interest, for a total of $186,203.90, against ESCI's debt to the government under Contract II, plus interest, for a total of $230,170.43. The government asserts that the setoff, at this point in time, is proper, despite the fact that the termination for default under Contract II is still under review at the Board in Case No. 51722.

In *Dale Ingram, Inc.*, the United States Court of Claims held that the government was within its rights to setoff a COFD finding that the plaintiff was indebted to the government, against a separate ASBCA judgment in favor of the plaintiff, and that the government had the right to withhold the monies until the other case had been finally decided. *Dale Ingram, Inc. v. United States,* 201 Ct.Cl. 56, 76, 475 F.2d 1177, 1188 (1973). Similar to the situation in *Dale Ingram,* the government and ESCI are awaiting the decision of the Board in ASBCA Case No. 51722 on Contract II (the Yorktown, Virginia contract). ASBCA Case No. 51722 is an appeal limited to the Navy's termination of ESCI for default on Contract II. As noted, whereas ESCI appealed the termination for default, it did not appeal the reprocurement costs and liquidated damages assessed on Contract II

by the COFD, and has not paid the assessment. However, the setoff monies owed for reprocurement costs and liquidated damages could be impacted by a decision in favor of the plaintiff in ASBCA Case No. 51722, should the Board overturn the Navy's termination for default. The parties and the court only can speculate at this time as to how the ASBCA will rule and what impact the ruling might have on the defendant's setoff. Plaintiff's appeal to the ASBCA on the default termination remains pending as of the date of this opinion. Defendant advises that, should the COFD be overturned in ASBCA Case No. 51722, defendant will review the setoff for whether it should be dissolved, or whether ESCI owes other funds to the government on other contracts that would warrant further setoff action. At this point in time, under the rule established in the United States Supreme Court in *United States v. Munsey Trust Co.,* 332 U.S. at 239, 67 S.Ct. 1599, and acted on by the United States Court of Claims in *Dale Ingram, Inc. v. United States,* 201 Ct.Cl. at 76, 475 F.2d at 1188, unless and until the COFD termination decision is overturned, the government possesses a right of setoff, based on the second COFD in Contract II. Therefore, at the present time, defendant has a setoff defense against collection of plaintiff's ASBCA adjudicated entitlement for $93,989.00, plus interest, on Contract I.

## III. ESCI's Takings Claim.

 In the first Count III of the plaintiff's complaint, titled "Fifth Amendment Taking Clause," the plaintiff asserts that the government took ESCI's Contract I judgment award in violation of the Takings Clause of the United States Constitution.[11] In the complaint, the plaintiff asserts:

11. The applicable statute of limitations in a takings case is six years, pursuant to 28 U.S.C. § 2501. Plaintiff theoretically has made the filing deadline in this court for the takings portion of plaintiff's case, if the applicable six years is calculated as starting to run when the plaintiff knew or should have known that the claim existed. "With respect to the statute of limitations governing claims in this court, suits must be brought within six years of the accrual of the claim. *See* 28 U.S.C. § 2501. Accrual takes place when all the events necessary to give rise

to the alleged liability have occurred. In the instance of takings, accrual of a claim occurs as of the date of the alleged taking." *City of Gettysburg, S.D. v. United States,* 64 Fed.Cl. 429, 444 (2005) (citing *Banks v. United States,* 314 F.3d 1304, 1308 (Fed.Cir.2003) and *Boling v. United States,* 220 F.3d 1365, 1370 (Fed.Cir.2000) ("In general, a takings claim accrues when 'all events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.' ")) (other citation

The government United States, through the Navy, has taken and/or seized Mr. Nwogu's property rights in property values in ESCI, in violation of the Fifth Amendment. Government denying [sic] Nwogu access to earned funds in ESCI and prohibiting receipt of the contract earned judgment—funds as Project Manager, Owner and President and sole shareholder of ESCI is [sic] violation of the Fifth Amendment Taking Clause of the U.S. Constitution.

The property's rights taking in violation of Fifth Amendment occurred on 16 September 2005, when the Board ruled that Government is liable and should pay ESCI in the amount of $93,989, plus interest from 1992 through present and the government has refused to make payments constituting taking. Mr. Nwogu and ESCI are entitled to post-judgment interest pursuant to 31 U.S.C. § 3901, et seq.

▇▇▇▇ It appears from the complaint that the plaintiff alleges the seizure of its judgment award in ASBCA Case No. 53485 as the property interest taken. Unlike ESCI's claims addressed above, this court has jurisdiction over takings claims, and the ASBCA does not possess such takings jurisdiction. However, the government correctly states that a judgment award against the United States is not a cognizable property interest under the Fifth Amendment Takings Clause.

▇▇▇ Under the Tucker Act, the United States Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000.00 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

Therefore, "a claim for just compensation under the takings clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *E. Enters. v. Apfel*, 524 U.S. 498, 520, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016–19, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)); *see also Acceptance Ins. Cos. v. United States*, 503 F.3d 1328, 1336 (Fed.Cir.2007); *Morris v. United States*, 392 F.3d 1372, 1375 (Fed.Cir.2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."); *Rhaburn v. United States*, 88 Fed.Cl. 310, 313 (2009), *aff'd*, No. 2010–5017, 2010 WL 3034666 (Fed.Cir. July 30, 2010). The United States Supreme Court has declared: "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [United States Court of Federal Claims] to hear and determine." *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (quoting *United States v. Causby*, 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)); *see also Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1368 (Fed.Cir.2005); *Narramore v. United States*, 960 F.2d 1048, 1052 (Fed.Cir.1992); *Rasmuson v. United States*, 91 Fed.Cl. 204, 209 (2010); *Perry v. United States*, 28 Fed.Cl. 82, 84 (1993).

The parties submitted a Joint Stipulation of Facts, accompanied by an appendix of documents, briefs, and two substantive Joint Status Reports, accompanied by additional documents. With respect to ESCI's takings claim, the court finds no genuine issue as to any material fact. Moreover, plaintiff has not alleged a private property interest which can be taken for public use. Therefore, the court concludes that summary judgment can

---

omitted), *aff'd*, 173 Fed.Appx. 827 (Fed.Cir.), *cert. denied*, 549 U.S. 955, 127 S.Ct. 405, 166 L.Ed.2d 273 (2006); *see also Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed.Cir.), *cert. denied*, — U.S. ——, 130 S.Ct. 271, 175 L.Ed.2d 133 (2009). Counting from September 15, 2005, the date of the ASBCA's quantum decision in ASBCA Case No. 53485, plaintiff's April 28, 2009

complaint is within the six year statute of limitations. However, given the unresolved ASBCA default termination case and, therefore, the unresolved setoff claim by the government, arguably the plaintiff's takings claim is not even ripe. Regardless, as is discussed below, plaintiff has identified no cognizable property right to support a takings claim.

be employed to resolve the plaintiff's takings claim. *See* RCFC 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48, 106 S.Ct. 2505.

When determining whether a particular government action constitutes a taking, courts consider the character of the government's alleged interference with property rights. *See Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 769, 572 F.2d 786, 818 (1978) (citing *Finks v. United States*, 184 Ct.Cl. 480, 489, 395 F.2d 999, 1004, *cert. denied*, 393 U.S. 960, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968)). "When the government 'takes' property, it exercises its rights as sovereign to acquire property from the rightful owner for the public good." *J & E Salvage Co. v. United States*, 36 Fed.Cl. 192, 195 (1996), *aff'd*, 152 F.3d 945 (Fed.Cir.) (table), *cert. denied*, 525 U.S. 827, 119 S.Ct. 76, 142 L.Ed.2d 59 (1998). On the other hand, when the government "comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there." *Id.* (quoting *Sun Oil Co. v. United States*, 215 Ct.Cl. at 770, 572 F.2d at 818). "As a consequence, a takings claim cannot be based on the Government's acting in its proprietary capacity." *J & E Salvage Co. v. United States*, 36 Fed.Cl. at 195 (citing *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 798 (Fed.Cir.1993)). "[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed.Cir.2001) (quoting *Sun Oil Co. v. United States*, 215 Ct.Cl. at 770, 572 F.2d at 818), *reh'g and reh'g en banc denied* (Fed.Cir.2002); *see also St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed.Cir.2008); *J & E Salvage Co. v. United States*, 36 Fed.Cl. at 195. "Taking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights." *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d at 1070 (citing *Sun Oil Co. v. United States*, 215 Ct.Cl. at 769–70, 572 F.2d at 818) (citations omitted). "[W]hen the Government acts as a contractual partner in a commercial venture, the rights and responsibilities of the parties must be analyzed with reference to the contract. . . ." *Sys. Fuels, Inc. v. United States*, 78 Fed.Cl. 769, 809 (2007), *recons. on other grounds*, 92 Fed.Cl. 101 (2010).

A contract claim, however, does not preclude also alleging a takings claim in the same complaint. *See Stockton E. Water Dist. v. United States*, 583 F.3d 1344, 1368–69 (Fed.Cir.2009) (A party may allege in the same complaint "two alternative theories for recovery against the Government, for example, one for breach of contract and one for a taking under the Fifth Amendment to the Constitution. That is expressly permitted by the Federal Rules, and the fact that the theories may be inconsistent is of no moment. *See* Fed.R.Civ.P. 8(d)(3) ('A party may state as many separate claims . . . as it has, regardless of consistency.')"); *see also* RCFC 8 (with identical language in this court as in Rule 8 in the Federal Rules of Civil Procedure).

Plaintiff, nevertheless, must show that the government took its private property for public use without just compensation. *See AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed.Cir.2008), *reh'g and reh'g reh'g en banc denied* (Fed.Cir.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 1611, 173 L.Ed.2d 993 (2009); *Adams v. United States*, 391 F.3d 1212, 1218 (Fed.Cir.2004) ("A claimant under the Takings Clause must show that the government by some specific action, took a private property interest for a public use without just compensation."), *cert. denied*, 546 U.S. 811, 126 S.Ct. 330, 163 L.Ed.2d 43 (2005). "First, the court determines whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking. Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was

'taken.'" *Acceptance Ins. Cos. v. United States,* 583 F.3d 849, 854 (Fed.Cir.2009) (citations omitted), *cert. denied,* —— U.S. ——, 130 S.Ct. 2402, 176 L.Ed.2d 922 (2010). As to the first question, "'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." *Id.* at 857 (quoting *Conti v. United States,* 291 F.3d 1334, 1340 (Fed.Cir.2002)).

■ In the case currently under review, this court concludes that plaintiff ESCI does not possess a cognizable property interest subject to a Takings Clause claim. The alleged "property" in this case is an ASBCA judgment, stemming from a procurement contract dispute with the government, and subject, as addressed above, to possible setoff. The ASBCA entitlement and damages awarded in ASBCA Case Nos. 47498 and 53485, stemming from Contract I, are subject to appeal, not to this court, but to the United States Court of Appeals for the Federal Circuit. No settlement agreement, alleged by plaintiff to have come into existence as a quid pro quo for dismissal of the appeals in the Federal Circuit, is in the record before the court, or even plausible based on the record. Even if a settlement agreement actually existed, enforcement of such an agreement would be a breach of contract action, not a takings claim.

The United States Supreme Court has held that the government is "ordinarily treated just like a private party in its contractual dealings." *United States v. Winstar Corp.,* 518 U.S. 839, 887, 116 S.Ct. 2432, 135 L.Ed.2d 964 n. 32 (1996) (citing *Perry v. United States,* 294 U.S. 330, 352, 55 S.Ct. 432, 79 L.Ed. 912 (1935) (When the United States "makes contracts, it has rights and incurs responsibilities similar to those of individuals who are parties to such instruments.")). Furthermore, the Supreme Court noted that the government's failure to keep contractual promises, like any other party, results in damages under a breach of contract theory. *United States v. Winstar Corp.,* 518 U.S. at 885 n. 30, 116 S.Ct. 2432 ("'The award of damages is the common form of relief for breach of contract. Virtually any breach gives the injured party a claim for damages.'" (quoting 3 E. Farnsworth, *Contracts* § 12.8, p. 185 (1990))). With the government's common law right of setoff acknowledged, as discussed above, the property interest plaintiff offers as a candidate for a compensable taking (the ASBCA award of $93,989.00 in Case No. 53485) is not the type of private property interest taken for public use from which a compensatory taking under the Fifth Amendment to the Constitution arises.

## CONCLUSION

For the foregoing reasons, the court dismisses all of the plaintiff's claims and directs the Clerk's Office to dismiss the plaintiff's complaint, with prejudice. Plaintiff's claims as to national origin discrimination, violations of Due Process, the Equal Protection Clause, the Thirteenth Amendment to the United States Constitution, *quantum meruit,* and punitive damages are dismissed for lack of subject matter jurisdiction in this court. The court dismisses the plaintiff's breach of contract claim, because the election of forum doctrine and the CDA's 12-month statute of limitations bar suit in this court. The court dismisses the plaintiff's request to review and enforce an ASBCA monetary judgment because this court lacks jurisdiction to review ASBCA decisions, with such review available only in the United States Court of Appeals for the Federal Circuit. At this time defendant has a legitimate right to maintain a setoff defense on the award to plaintiff on Contract I of $93,989.00, pending resolution of Case No. 51722 on Contract II at the ASBCA between ESCI and the government. Plaintiff's allegation of a settlement agreement is not supported by the record before the court. The court also dismisses the plaintiff's Fifth Amendment takings claim, because plaintiff has asserted no cognizable, compensable property interest. The Clerk's Office shall enter judgment consistent with this opinion.

**IT IS SO ORDERED.**